MARY E. PORTER v. ARTHUR C. PORTER AND MARY J. THROOP.

*Construction of wills—Children "surviving" life-estate.*

A testator gave his widow an estate for life in his entire property, and added a residuary clause providing that on her decease it should be equally divided between his "surviving children." *Held,* that under

the rules of construction that have always prevailed in Michigan, the will vested an estate in all the children surviving at his death, and that the heirs-at-law of any child who died before the widow were entitled to the share of their ancestor unless the will indicated otherwise.

Terms used in wills are generally to be construed as having the meaning which has become generally accepted, but they are also to be construed in connection with the rest of the will.

Error to Wayne. (Chambers, J.) April 19.—April 25.

EJECTMENT. Defendants bring error. Affirmed.

*Wilkinson, Post & Wilkinson, F. G. Russell* and *Levi T. Griffin* for appellant. The early English decisions adopted the rule that words of survivorship, unless a special intent to the contrary appeared on the face of the will, were to be referred to the death of the testator; but many years ago that rule was discarded in England, and for more than half a century now the English courts have steadfastly held to the contrary rule that words of survivorship in the absence of a special intent on the face of the will are to be referred to the period of distribution, and where preceded by a life estate are to be applied to the time of the death of the tenant for life: 3 Jarm. Wills (5th Am. ed.) 571, citing in illustration of the first rule: *Lord Bindon v. Earl of Suffolk* (1707) 1 P. Wms. 96; *Smith v. Horlock* (1816) 7 Taunt. 129; *Stringer v. Phillips* (1730) 1 Eq. Cas. Ab. 293; *Vere v. Hill* (1766) 3 Burr. 1881; *Wilson v. Bayley* (1760) 3 B. P. C. 195; *Roebuck v. Dean* (1793) 2 Ves. Jr. 265; (but see *Brograve v. Winder* 2 Ves. Jr. 634;) *Perry v. Woods* 3 Ves. Jr. 204; *Maberly v. Strode* 3 Ves. Jr. 450; (but contrast *Russell v. Long* 4 Ves. 551;) *Brown v. Bigg* (1802) 7 Ves. 279; *Garland v. Thomas* 1 Bos. & P. N. R. 82; *Edwards v. Symons* (1815) 6 Taunt. 213; *Long v. Prigg* (1828) 8 B. & C. 231; the gradual change to the later rule is indicated in these cases: *Newton v. Ayscough* 19 Ves. 534; *Hoghton v. Whitgreave* 1 J. & W. 146; *Daniell v. Daniell* 6 Ves. 297; *Wordsworth v. Wood* 2 Beav. 25: 1 H. of L. Cas. 129; *Cripps v. Wolcott* (1819) 4 Madd. 11;

*Blewitt v. Roberts* (1840) 10 Sim. 491: Cr. & Ph. 274;
*Pope v. Whitcombe* (1826) 3 Russ. 124; *Neathway v. Reed*
(1853) 3 DeG. M. & G. 18; *Hearn v. Baker* 2 K. & J.
383; *Vorley v. Richardson* (1856) 8 DeG. M. & G. 126;
*Stevenson v. Gullan* 18 Beav. 590; *Knight v. Poole* 32
Beav. 548; *Buckle v. Fawcett* (1845) 4 Hare 536; *Re Grey-
son's Trusts* 2 De G. J. & S. 428; see in support of the rule:
*Gibbs v. Tait* (1836) 8 Sim. 132; *Taylor v. Beverley* (1844)
1 Coll. 108; *Williams v. Tartt* (1845) 2 Coll. 85; *Eaton v.
Barker* id. 124; *M'Donald v. Bryce* (1853) 16 Beav. 581;
*Spurrell v. Spurrell* (1853) 11 Hare 54; *Stevenson v. Gullan*
(1854) 18 Beav. 590; *In re Pritchard's Trusts* 3 Drew 163;
*Hesketh v. Magennis* (1859) 27 Beav. 395; *Atkinson v.
Bartrum* (1860) 28 Beav. 219; *Thompson v. Thompson*
(1861) 29 Beav. 654; *Knight v. Poole* (1863) 32 Beav. 548;
*Young v. Davies* 2 Dr. & Sm. 167; *Naylor v. Robson*
(1865) 34 Beav. 571; *In re Fox's Will* (1865) 35 Beav. 163;
*Howard v. Collins* (1867) L. R. 5 Eq. Cas. 349; *Marriott
v. Abell* (1869) L. R. 7 Eq. Cas. 478; *In re Hill's Trusts*
(1871) L. R. 12 Eq. Cas. 302; in the United States the
early rule was followed in *Drayton v. Drayton* (1793) 1
Dessau. 324: *Hansford v. Elliott* (1837) 9 Leigh 79; *Mar-
tin v. Kirby* (1854) 11 Grat. 67; *Ross v. Drake* 37 Penn.
St. 373; *Doe v. Provoost* 4 Johns. 63; *Moore v. Lyons*
(1840) 25 Wend. 119 (but a different rule was followed in
respect to personal property: *Teed v. Morton* 60 N. Y.
502; *Vincent v. Newhouse* 83 N. Y. 511); and the later
rule in *Tier v. Pennell* 1 Edw. Ch. 357; *Schoppert v. Gil-
lam* 6 Rich. Eq. 83; *Wessenger v. Hunt* 9 Rich. Eq. 459;
*Hill v. Rockingham Bank* 45 N. H. 270; *Robertson .v.
Wilson* 38 N. H. 48; *Hulburt v. Emerson* 16 Mass. 241;
*Dixon v. Picket* 10 Pick. 517; *Olney v. Hull* 21 Pick.
311; *Houghton v. Kendall* 7 Allen 72; *Thomson v. Luding-
ton* 104 Mass. 193; *Van Tilburgh v. Hollinshead* 1 McCar-
ter 32; *Holcomb v. Lake* 4 Zabr. 686; *Williamson v. Cham-
berlain* 2 Stockt. 373; *Slack v. Bird* 23 N. J. Eq. 238;
*Seddel v. Wills* 20 N. J. L. 223; *Sinton v. Boyd* 19 Ohio
St. 30; *Richey v. Johnson* 30 Ohio St. 288; *Blatchford v.*

*Newberry* 99 Ill. 11; *Stephens v. Evans* 30 Ind. 39; *Wren v. Hynes* 2 Metc. (Ky.) 129; *Hughes v. Hughes* 12 B. Mon. 115; *Biddle v. Hoyt* 1 Jones Eq. 159; *Knight v. Knight* 3 Jones Eq. 167; compare also *Haskins v. Tate* 25 Penn. St. 249; *Branson v. Hill* 31 Md. 181; *Handberry v. Doolittle* 38 Ill. 202; *Ridgeway v. Underwood* 67 Ill. 419.

*Geo. V. N. Lothrop* for appellee. The rule that in the absence of express indications to the contrary, survivorship is to be referred to the death of the testator, when a particular precedent estate was created and the enjoyment of the remainder deferred to the termination of the particular estate, (2 Jarm. Wills 722; *Moore v. Lyons* 25 Wend. 139; *Ross v. Drake* 37 Penn. St. 373) seems to be favored in Michigan: *Toms v. Williams* 41 Mich. 564; *Eberts v. Eberts* 42 Mich. 406; if a legacy is made to take effect "after" or "upon" the death of a preceding devisee, it is not the intention to create a contingent estate but to indicate when the remainder shall take effect: *Livingston v. Greene* 52 N. Y. 123; *Embury v. Sheldon* 68 N. Y. 227; courts are inclined to regard estates by will as vested instead of being contingent: 2 Redf. Wills 629; *Moore v. Littel* 41 N. Y. 76; *Lawrence v. Bayard* 7 Paige 75; it is presumed that a testator means to treat his children alike in disposing of his estate by will: *Olney v. Hull* 21 Pick. 314.

CAMPBELL, J. The controversy in this case is between the widow of a son of George F. Porter deceased, (who died between the decease of his father and of his mother the widow of George F. Porter, who had a life interest in her husband's estate,) and the surviving children of George F. Porter. The question is whether the estate given by George F. Porter by will to his children was vested or contingent on their outliving their mother. The will, after giving Mrs. Eliza G. Porter an estate for life in the entire property of the testator, contained the following residuary clause:

"On the decease of my wife, Eliza G. Porter, I desire my property to be divided equally between my surviving children, deducting from the share of my eldest son the sum

advanced to him and appearing in my books under the head of 'Arthur C. Porter, advancement,' and also the sum he may owe me on general account; and providing from my estate for the education and support of the younger children until they respectively arrive at the age of twenty-one years, before such distribution. I direct that the support of my younger children be provided for during the life-time of my wife from the devise of income to her, and also their education."

Four children, Arthur, Mary, Gove and George, survived their father. George died unmarried, and Gove died leaving a widow and child during the life of Mrs. Eliza G. Porter. The widow of Gove Porter sues now for an interest in her husband's estate derived from his father's will.

The case falls within the same principle as *Rood v. Hovey* ante, p. 395, presented at an earlier part of the term. We think, on the rules of construction which have always prevailed in this State, that immediately on George F. Porter's death his children took vested estates subject only to the life estate and other burdens imposed by law or by the will. We can discover nothing in the will indicating any different intent, and we do not think the purposes of justice or the policy of the laws would be subserved by attempting to change this rule. Wills have been made in this region from a period when the concurrent views of most of the authorities from which we derive our analogies agreed on this interpretation. The statutes have been during that interval so changed as to further and not to destroy that interpretation. It can hardly be expected that all minds will concur in the same view as an original matter. Neither is it always safe to infer that local laws and policy may not account for many of the conflicts among courts. But it is generally true that terms are used in wills as they are used in other documents, with the meaning which has become generally accepted. It would be dangerous to act on any other presumption; and it would be dangerous and unjust to have fluctuating rules. It is now and always has been proper and obligatory to give every will the meaning fairly to be deduced from its whole terms. The same words standing alone may have a different meaning than what

should be given them when qualified or affected by other parts of the will. But there is nothing in this will to indicate any different meaning, and we do not think we are called on to change the law of the State. It is easy enough in drawing wills to fix the time of vesting beyond any peradventure. But local law and reason both, in our judgment, favor vested estates, and subserve justice. If the rule once established seems unreasonable to the Legislature it is easily changed, and persons drawing wills are supposed to understand what they are doing, and those who act on their advice take no greater risks in these than in other cases.

The judgment below was in accordance with these views and must be affirmed with costs and the record remanded, as is customary in ejectment cases.

The other Justices concurred.