HAY v. HAY.

1. WILLS—CONSTRUCTION—INTENT.

The construction to be given a will must be controlled by the testator's intent, if within legal limitation, as gathered from the four corners of the will.

2. DESCENT AND DISTRIBUTION—DETERMINATION OF HEIRS—WILLS.

When a person dies intestate his heirs are determined as of the date of his death and the estate disposed of accordingly, but when an estate is disposed of by will, disposition of the property is governed by its terms.

3. WILLS—DETERMINATION OF HEIRS—INTENT—HEIRS AS REMAINDERMEN OR DEVISEES OF AN EXECUTORY INTEREST.

In the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs to whom a remainder or an executory interest is given by will, is to be ascertained as of the death of the testator.

4. SAME—DETERMINATION OF HEIRS AS A CLASS OF DEVISEES.

Rule that class described as testator's heirs to whom a remainder or an executory interest is devised is to be ascertained as of testator's death is not a substantive rule of law but a rule of interpretation for ascertaining his intent and never should be used to defeat what, from the whole will, appears with reasonable certainty to have been his intention.

5. SAME—PRIMARY RULE OF CONSTRUCTION—INTENT.

In will cases the primary rule of construction and the primary function of courts is to ascertain from the four corners of a will the intent of the testator and, if legally possible, that intent must prevail.

6. SAME—VESTING OF TITLE—TRUSTS—ANNUITIES—HEIRS AS CLASS OF DEVISEES.

Where it appears testator gave substantial annuities to each of the persons who would have taken his estate had he died

intestate, gave such persons no direct title to any part of his estate, provided for payment of such annuities out of the corpus in case income was insufficient and for their termination upon the termination of the trust rather than termination of trust upon termination of annuities, attached spendthrift trust provisions to each of the annuities, gave the trustee certain powers and suspended exercise of certain others, provided that trust should continue as to realty during lives of 2 named grandsons and as to personalty until 21 years after death of surviving grandchild living at testator's death, and then distributed to "my legal heirs," such heirs are those who would be testator's heirs at law at the termination of the respective phases of the trust and not heirs at time of testator's death, hence title of assets vested in trustee.

7. TRUSTS—ORDER ESTABLISHING TRUST NOT SUBJECT TO COLLATERAL ATTACK.

Unappealed order assigning residue of large estate to testamentary trustee established a valid trust and is not subject to collateral attack in suit commenced some 20 years later for a judicial construction of the will.

8. SAME—VESTING OF TITLE DURING TERM OF TRUST—POWER OF TRUSTEE.

Where will gave to the trustee the power during the term of the trust, complete control of the management, use and sale of the assets of the estate as the testator himself, had he lived, could have exercised, subject only to the payment of testamentary annuities, title to the corpus of the estate vested in the trustee even in the absence of express words of devise or bequest.

9. SAME—VESTING OF TITLE—POWERS—PRESUMPTIONS.

Where there is no express devise to the trustees it must appear that it is the intention of the testator that they shall take an estate, and where from the nature of the duties to be performed, it appears that the taking of an estate is necessary, the intention of the testator will be presumed.

10. WILLS—PRESUMPTION AGAINST INTESTACY.

The presumption against intestacy is so strong that courts will adopt any reasonable construction of a will to avoid it.

11. SAME—PARTIAL INTESTACY.

Partial intestacy will not be declared because testator did not specifically devise his real estate to his trustees where the will names a certain party as trustee and executor to manage the

estate, conduct the trust, to sell, convey and lease any of the same and invest and reinvest the proceeds until the termination of the trust.

12. SAME—CONSTRUED AS A WHOLE.
A will must be construed as a whole.

13. SAME—CONSTRUCTION—ADVISABILITY OF PROVISIONS.
Where the provisions of a will are within the requirements and limitations of the law, the testator's disposition of his estate, as it appears from the four corners of the will, must be sustained, irrespective of the advisability or wisdom of the testator's will.

14. SAME—VESTING OF ESTATES—INTENT.
Although the vesting of estates at the earliest possible moment is favored in the law, said rule must not be applied to frustrate the manifest intent of a testator in disposing of his estate by will.

15. SAME—HEIRS AS CLASS OF DISTRIBUTEES.
Where will recited that realty was to be distributed upon the death of the survivor of two named grandsons and that personalty was to be distributed upon the death of the survivor of grandchildren in being at time of testator's death, and trustee was given ample powers to administer trust, the trustee became vested with the title and distribution, pursuant to will, was to be made of the respective portions of the estate among the legal heirs of the testator at the respective times of distribution.

16. SAME—INVALIDITY OF TRUST AS TO PART OF ASSETS.
Will *held*, not to have been rendered invalid *in toto* notwithstanding that substantial portion of the assets were taken out from under the operation of residuary trust because disposition of the assets contravened Minnesota statute against perpetuities.

BUSHNELL and REID, JJ., dissenting.

Appeal from Saginaw; O'Neill (James E.), J. Submitted January 9, 1946. (Docket No. 41, Calendar No. 43,231.) Decided April 8, 1947. Rehearing denied May 16, 1947.

Bill by Jane Burt Hay and others, against Wellington Burt Hay and others to obtain construction

of the will of Wellington R. Burt, deceased, and settlement agreement approved by the circuit court. Decree for defendants. Plaintiffs appeal. Certain defendants cross appeal. Affirmed.

*Miller, Canfield, Paddock & Stone (Edward S. Reid, Jr.,* and *Herbert J. Dwan,* of counsel), for plaintiff Hay and others.

*Hill, Hamblen, Essery & Lewis (Sherwin A. Hill* and *Charles E. Lewis,* of counsel), for plaintiff Hutchings.

*Hamilton & Sigler (Burritt Hamilton,* of counsel), for plaintiffs Burt and Scheuch.

*Thomas G. Long, William C. O'Keefe* and *Gilbert A. Currie,* for defendant trustees.

*Waldo C. Granse,* for defendants Hay.

*Franklin D. Hepburn,* for defendant del Strother.

*Sempliner, Dewey, Stanton & Honigman,* for guardian *ad litem* for certain defendants.

*Arthur J. Tuttle* and *Robert S. Beach,* guardians *ad litem* for all persons who may hereafter come into being and who might have any future contingent estate or interest in the trust estate created by the will.

REID, J. (*dissenting*). The bill of complaint in this cause was filed to obtain judicial construction of the will of Wellington R. Burt, deceased, of a settlement agreement of the heirs and of a decree of the circuit court for Saginaw county in chancery

approving the agreement. Also involved is the effect of an order of the probate court assigning residue. Plaintiffs appeal from the decree of the circuit court dismissing their bill of complaint.

Wellington R. Burt, a resident of Saginaw, died March 2, 1919, leaving a last will and testament, together with three codicils to the will. The will was executed August 8, 1917; the three codicils were executed respectively on September 25, 1917, December 13, 1917 and February 6, 1918. The will and codicils were offered for probate on March 8, 1919. At the time of his death, the eight heirs at law of testator and their presumptive interests in his estate were: Jane Burt Hay, daughter, 1/6; George R. Burt, son, 1/6; Emma Burt Hutchings, daughter, 1/6; Marion Burt Stone, daughter, 1/6; Margaret Ashley Paddock, granddaughter, 1/6; Alice Burt McDowell, granddaughter, 1/18; Mary Bell LeBus, granddaughter, 1/18; and Marion Stone Burt, granddaughter, 1/18. The heirs appeared in probate court and filed a protest against the allowance of the will. The contest was certified to the Saginaw county circuit court on June 22, 1920. While the contest was pending and undetermined, all of the above mentioned heirs entered into a compromise agreement with the executor and trustee named in the will, to settle the contest.

Among other things, the agreement provided that the will be admitted to probate, that such heirs as were annuitants should cancel the annuities which had been provided for them in the will, for the confirmation of the title of the heirs at law to lands of deceased located in the State of Minnesota, for a method of financing the payment of $720,000 to the heirs, parties to the agreement, and for the payment of estate taxes and inheritance taxes. The agreement contained no express stipulation as to who

were to be the ultimate distributees of the estate at the termination of the trust, except as they were described in the will as ''my legal heirs.'' The contest over the will was withdrawn. The will and three codicils were duly admitted to probate, August 13, 1920.

Plaintiffs do not deny the validity of the settlement agreement, nor the validity of the chancery decree of July 27, 1920, which recognized the validity of the agreement, nor do they deny the validity of the order of the probate court, dated May 24, 1922, closing the administration and assigning the residue of the estate to the trustee. Plaintiffs request the Court to construe the will, the settlement agreement, the chancery decree and the order of the probate court, as those four documents are written, and request the Court to assign to plaintiffs their rights under such construction. Plaintiffs stress as important questions (a) construction of the will as to who are to be considered the distributees and (b) the distribution of the trust estate.

Plaintiffs claim that the will did not set forth a true trust, that there was no grant of title to trustee, but that the trustee received powers in trust and that the trustee's duties are necessarily required to be carried out by powers without title. It is further the claim of plaintiffs that if a true trust was created by the will rather than a grant of powers to the trustee, then the trustee took legal title for the purposes of the trust and plaintiffs further claim that the remainder vested on the death of testator in his heirs and did not remain contingent upon survival at the respective times of distribution.

The bill alleges and the answer admits that the annual account of trustee shows as of May 31, 1940, in the main trust fund, $7,287,507.07 in personal property and $163,498.04 in real estate, and that of

the mortgage trust, $1,899,869.28 represents cash and securities and $554,362.76 represents the balance owing from the heirs on mortgage trust indebtedness; that the ordinary net income of the main trust is $250,000 annually and of the mortgage trust, $75,000; and that the annuity charges aggregate $19,666.66 annually, which will decrease with the successive deaths of annuitants. The will provided originally for annuities totaling $89,000 besides other private charities and some public charities, but a codicil eliminated the $5,000 annuity to Marion Burt Stone, his daughter.

Paragraph 20 of the will is as follows:

"(20) The trust herein created shall continue for and during the period of the lives of my two grandsons, Wellington Burt Hay and Wellington R. Burt. Upon the death of the last survivor of these two grandsons, all the real estate remaining in the trust shall be distributed among my legal heirs, but all personal property shall continue in the trust for 21 years after the death of my last surviving grandchild that shall be living at the time of my death, and shall be subject to the terms and conditions hereinbefore set forth. At the end of 21 years after the death of my last surviving grandchild that shall be living at the time of my death, the trust shall terminate and all the funds of every name and nature remaining in the trust shall be distributed to my legal heirs."

The principal question discussed in the briefs is the meaning of the phrase, "my legal heirs," whether it means those who were testator's legal heirs at the time of his death, as plaintiffs claim, or those who would be his legal heirs at the termination of the trust, as defendants claim.

The bill alleges that, according to present expectancies, distribution of the real estate would be de-

layed until 1969, and of the personal property until 1993 and if group expectancies are taken, the trust might not terminate until the year 2000. Defendants in their brief assert that the trust is "estimated by the mortality tables to continue well into the last decade of the present century." The testator must have had in mind that in the early part of the period between his death and the expiration of the trust, many of the annuities would cease in the ordinary course of events, and there would soon come about a situation where under defendants' theory as to distribution there would be no person who as *cestui que trust* would have any assured interest in the trust property and thus have a personal incentive to see to it that the trust was properly carried out.

Courts must largely depend on the personal vigilance of beneficiaries to protect their own rights. Merit of a present trustee is no assurance that the trusteeship will be faithfully executed during the next 50 years. It can be assumed that a man of the business acumen of Mr. Burt would not intend to leave the bulk of his estate for a half a century unguarded by the watchful eye of a definitely and assuredly interested distributee, to see to it that the trust was faithfully and efficiently executed.

Testator had such safeguarding in mind and provided in paragraph 22 of the will, "The trustee and executor shall make a yearly report in detail to my son, George R. Burt, as to the condition of the estate." George R. Burt would not be greatly interested in the "report in detail" if his only interest was to secure the annual payment of his annuity, because the annual income of the estate far exceeded all the annuities, and paragraph 14 provided that even the principal could be used for the annuities. If one were to read paragraph 22 without the provisions of paragraph 20 in mind, one could conclude

that the testator thought his son George was capable and that testator had clothed him with authority to see to it that the trust was faithfully administered, and that his said son in fact had a vested interest in the final distribution of the trust estate. This provision in paragraph 22 and the provision in paragraph 23 that application for appointment of trustee to fill vacancy could be made by anyone who might be interested as a beneficiary or distributee, are the only matters contained in the will, aside from paragraph 20, that could throw light on the meaning of the words, "my legal heirs," as used in paragraph 20. If defendants' theory as to the meaning of the word "heirs" is adopted, there would be no person during the trusteeship who could definitely assert an interest as a distributee, and so be qualified to make such application as provided for in paragraph 23. No other provisions of the will throw any light on the meaning of the word "heirs" as used in paragraph 20.

If testator had intended the title not to vest in his heirs at his death, the scrivener would probably have prepared an express provision for the vesting in the trustee, a matter of considerable importance, omitted in the will. Adoption of defendants' theory would result in two classes of heirs as beneficiaries with nothing to indicate why Mr. Burt should intend that result. He had consideration for his children, he cared for certain persons, some of whom were related to him and some not, but differentiated among them, providing annuities or legacies for some and withholding his bounty from others, so that it is very apparent that he relied on kinship or personal merit, or his regard, affection or dislike to guide him in making provision for those whom he actually did intend to be his beneficiaries.

Plaintiffs claim that the words in the will, "my legal heirs," refer to those who were the heirs of testator at the time of his death and not to those who would be such at the time of distribution. Plaintiffs further claim that the construction they contend for is a rule of property in Michigan; that immediate vesting is favored in Michigan; that a determination of the heirs as of the time of testator's death prevails over any language in the will that does not clearly indicate futurity of vesting; that determination of vesting at the testator's death prevails even when the vested remainderman cannot possibly ever go into possession; that the will in question as a whole requires the determination to be made as of the time of testator's death; that the testator in his will nowhere mentions whether the distribution should be *per stirpes* or *per capita*. Plaintiffs rely upon the fact that the settlement decree of 1920 did not undertake to construe the will, and further point out that the order of the probate court, turning the estate over to the trustee, did not adjudicate whether the distribution should be made to those who were heirs at the time of the testator's death or those who would be his legal heirs at the time of distribution.

Defendants claim that the legal heirs are to be determined as of the time the trust is to terminate. Defendants further claim that there is a valid trust under the will itself and also under the will as modified by the settlement agreement and further, that the decree in chancery approving the settlement agreement in effect adjudicated the validity of the trust and that the order of the court admitting the will to probate as modified by the settlement agreement in conjunction with the order of the probate court assigning the residue to the trustee, was an

adjudication that the trust set up in the will is a lawful trust. Defendants further claim that the plaintiffs have no vested remainder under the terms of the will itself, regardless of any adjudication to that effect. Defendants further claim that there being a valid trust, it cannot be terminated at the suit of the remainderman, and further, that the lapse of time and acts and conduct of the parties since the chancery decree of 1920 and the assignment of the residue by the probate court in 1922 should be considered as barring plaintiffs' claim of interest adverse to the trust and adverse to the "unborn" (assumed to be) distributees, and that plaintiffs are guilty of laches.

Much discussion occurs in the briefs of both plaintiffs and defendants as to the effect of the decision in *Dodge* v. *Detroit Trust Co.*, 300 Mich. 575. The Dodge estate and Wellington R. Burt estate were contemporaneous and had many points of similarity but the issues raised in the instant case are not the same as the issues raised in the Dodge litigation. In the *Dodge Case*, plaintiff sought to set aside a settlement agreement made during a will contest, by which agreement he obtained 60 per cent. of what he would have received had his father died intestate, by which agreement plaintiff also withdrew his contest of the will and surrendered his annuity. Such matters are not before us in the instant case and the *Dodge Case* can afford little aid where the settlement agreement and the decree ratifying and validating the agreement are not attacked.

"If he had in mind heirs to be ascertained as of some other date than his death, he would naturally have said so." *Thompson* v. *Clarke*, 264 Mass. 56, 59 (161 N. E. 889, 890).

"Had it been his purpose to suspend the vesting of the remainder until his daughter's death, it is

very probable he would have said so in unequivocal terms, and not have left it to be arrived at as a matter of inference." *Archer* v. *Jacobs,* 125 Iowa, 467, 480 (101 N. W. 195, 199) cited in *Re Shumway's Estate,* 194 Mich. 245, 253 (L. R. A. 1918 A, 578).

We should consider the ordinary meaning of the words, "legal heirs."

"Unless something appears to clearly indicate a different intention, it must be presumed that testator used the word 'heirs' in its ordinary legal sense; an 'heir' being one on whom local law of descent casts inheritance on the ancestor's death." *Goodgeon* v. *Stuart,* 50 R. I. 6 (144 Atl. 670), cited in 19 Words and Phrases (Perm Ed.), p. 257.

"An heir is one who receives, inherits, or is entitled to succeed to the possession of any property after the death of the owner; one in whom the title of an estate vests on the death of the proprietor." *Newcomb* v. *Lush,* 84 Hun (91 N. Y. Sup. Ct.), 254 (32 N. Y. Supp. 526, 529, syllabus), cited in 19 Words and Phrases (Perm. Ed.), p. 258.

"The word heirs has a technical meaning, and as such describes those who succeed to the ownership of real estate upon the death of the owner." *Menard* v. *Campbell* (syllabus), 180 Mich. 583 (Ann. Cas. 1916 A, 802). See p. 588 and cases there cited.

"When the testator makes a provision for *a gift to a class,* and provides that the property *shall be distributed* among such class at some point of time after testator's death, or upon the happening of some future event, a question is presented as to whether the class of beneficiaries is to be ascertained at testator's death or at the time of the distribution of the gift.

"Where the class of beneficiaries is described as 'heirs' or 'next of kin' of the testator, the class *must be determined as of the death of the testator,*

unless the will plainly indicated otherwise." (Italics supplied.) Citing cases from England, Connecticut, Florida, Georgia, Illinois, Maryland, Massachusetts, Missouri, New Jersey, North Carolina, Ohio, Rhode Island, South Carolina, Vermont and Virginia. 3 Page on Wills, 3d (Lifetime) Ed., p. 224.

"A legal heir is  *  *  *  the person to whom the law would give the decedent's property, real and personal, if he died intestate." *In re Wagar's Estate* (syllabus), 302 Mich. 243. See p. 247.

"A will speaks from the death of the testator, and the estate vests at that time, unless the will contains some provision to the contrary." citing *Rood* v. *Hovey*, 50 Mich. 395; *Hibler* v. *Hibler*, 104 Mich. 274, 281. *Clark* v. *Mack*, 161 Mich. 545, 550 (28 L. R. A. [N. S.] 479).

In 49 A. L. R. 177, 178, the rule is thus stated:

"It is a general rule of testamentary construction, so universally recognized as to render superfluous a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the *class* described *as testator's heirs,* or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, *to whom a remainder or executory interest is given by the will,* is to be ascertained at the death of the testator." (Italics supplied.)

"The law favors that construction of a will which will distribute the testator's estate most nearly in accordance with the statutes of descent and distribution." *Gardner* v. *City National Bank & Trust Co.,* 267 Mich. 270, 279. See cases there cited.

"This Court has more than once held that the policy of our statute is in favor of vested rather than contingent or postponed estates, and only

plain, unambiguous language by the testator will prevent application of that rule in construing a will." *In re Shumway's Estate, supra,* 254.

"The law favors that construction of the will which conforms most nearly to the general rule of inheritance." *Murdoch* v. *Bilderback,* 125 Mich. 45, 46.

"Wills must be construed so that the distribution will conform as nearly to the general rule of inheritance as the language will permit." Citing *Rivenett* v. *Bourquin,* 53 Mich. 10. *In re Lamb's Estate,* 122 Mich. 239, 241.

"Where upon an examination of the will it clearly appears that it was the intent of the testator that the estate should vest only on the happening of a particular event such intent will govern; where such intent does not clearly appear the estate will vest on the death of the testator. In other words, the intent will be given effect if clearly apparent, otherwise rules of construction will be applied." *In re Churchill's Estate,* 230 Mich. 148, 158, 159.

See *In re Patterson's Estate,* 227 Mich. 486, 489, in which we quote with approval from *Porter* v. *Porter,* 50 Mich. 456, as follows:

"In the *Porter Case,* after giving the widow an estate for life in all the property of the testator, the will provided:

" '*On the decease* of my wife, Eliza G. Porter, I desire my property to be divided equally between my *surviving* children,' et cetera.

"Mr. Justice CAMPBELL, speaking for the Court, said:

" 'We think, on the rules of construction which have always prevailed in this State, that immediately on George F. Porter's death his children took vested estates subject only to the life estate and other burdens imposed by law or by the will.' "

Further in the *Patterson Case,* on p. 491, after again citing *Porter* v. *Porter, supra,* we state the rule governing vested estates as follows:

"We think the rule has become one of property in this State, and that it should not be disturbed."

Defendants rely on the recent case, *In re Wagar's Estate,* 292 Mich. 452. However, the *Wagar Case* does not overturn the rule of property heretofore discussed nor does any Michigan case overturn that rule. The decision in the *Wagar Case* rested on a situation where a beneficiary predeceased the testator, who must have known that fact and still permitted the will to stand. On p. 455 of that opinion it is stated,

"Clearly, the testator intended to dispose of his whole estate, and to that end provided for devolution in case of a stated contingency. Does the fact that the grandchild died before the will became operative defeat the manifest purpose of the testator?"

Justice WIEST's opinion answers his own question in the negative. The will was so construed as to avoid causing a legacy to lapse. No such condition confronts us in the instant case, there being no involvement as to a lapse of a legacy. All the provisions of the Burt will are given effect by applying the established rule of property heretofore spoken of.

In the case of *In re Shumway's Estate, supra,* (decided about six months before the date of Mr. Burt's will), testator devised to his wife a life estate, and further provided, p. 252,

"After her decease, I give, devise and bequeath all of said real estate *to my legal heirs, to be divided* between them according to the provisions of the statute." (Italics supplied.)

In that case we quote with approval from 40 Cyc. p. 1668,

"There is nothing inconsistent or repugnant in a devise of a life estate with remainder to the life tenant, and such a remainder may be a vested one, and the fact that it can never come into the actual possession of the remainderman should not prevent its being so construed."

The decision in that case determined that *the heirs took a vested estate* at the time of testator's death.

As the main basis for their claim of futurity of vesting, the defendants in the instant case rely on the words in paragraph 20, "shall be distributed." In the Shumway will the words are, "to be divided," and in construing the Shumway will we say, p. 254,

"The only words of futurity found are of a kind presumed to relate particularly to the time of enjoyment of the remainder, rather than when the estates shall vest, and are to be so construed."

Under the foregoing and other authorities it becomes very apparent that the legal heirs of deceased, Wellington R. Burt, are to be determined as of the time of his death and that they took vested estates.

The above quotation regarding the Shumway will applies to and disposes of the main contention of defendants in the instant case. Defendants' claim amounts to a claim that the will created a contingent estate because it is legally impossible for testator to vest title in persons not yet born. Such contingent estates are not favored in law.

The brief of the guardian of the "unborn" cites *Brumsey* v. *Brumsey,* 351 Ill. 414 (184 N. E. 627), in which case the testator provided for a life estate to his daughter, and if she left no children, willed the lands "to my *then living* heirs-at-law." (Italics

supplied.) The words "then living" characterize the devise in a manner vitally different from the Burt will. The guardian also cites *Genung* v. *Best,* 100 N. J. Eq. 250 (135 Atl. 514), in which the word "shall" is accentuated and relied on as preventing the vesting in the heirs at the death of testator. The rule for Michigan is laid down by Justice CAMPBELL in *Porter* v. *Porter, supra,* and that rule is quoted with approval in the *Patterson Case, supra.* When we compare the words in the Porter will, "my property to be divided equally between my surviving children" (after death of life tenant, the widow), with the words in the Burt will, "shall be distributed to my legal heirs," it becomes apparent that futurity of determination of the heirs and of vesting is no more indicated in the Burt will than it is in the Porter will. See also, *Rood* v. *Hovey, supra.* The law for Michigan is thus seen as settled and it is against defendants' contention.

We construe the Burt will to point to the date of death of testator as the time when the distributees are to be determined, as to the real estate. As to the personal property, the result is the same. The distinction between the times of vesting in the heir of a title to the real and the personal estate is pointed out in *Glass* v. *Crossman,* 289 Mich. 130, 139, where we quote with approval from *Brewster* v. *Gage,* 280 U. S. 327, 334 (50 Sup. Ct. 115, 74 L. Ed. 457), as follows:

"Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of

possession in the heirs or legatees and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death.''

Since the vesting of the title of the heir to the personal property relates back to the date of testator's death, there is no actual ground for construing the words, ''my legal heirs,'' as to who shall be distributees of the personal property, in any manner different from the same words when applied to the real estate in the same paragraph 20 of the will.

We cannot consider that the testator expected any of his children to survive for 21 years the last survivor of his grandchildren who were living at the time of testator's death. We must, however, consider his provision of annuities for most of his heirs. He must have had considerable solicitude for their welfare, so we can fairly consider that he intended that such of his heirs as were annuitants would be presently vested with interests as final distributees, rather than unborn descendants for whom there is not the slightest solicitude shown anywhere in the will or evidenced in the record. Present vesting of rights as distributees can be considered as conferring valuable rights, even though subject to the trust.

Defendants claim testator had verbally expressed himself that none of his children should receive any of his estate. That statement carries no conviction of its truth, and is refuted by the annuity clauses in the will itself.

Even when the defendants' claim is considered in its most favorable light, still there is the plain situation that the will nowhere expresses a *clear* intention that the vesting of rights as distributees shall be remote and contingent. Unless it *clearly* appears

that the testator intended the vesting to be remote, the rule is practically universal in the various States that present vesting is preferred and is to be presumed. That rule is laid down for Michigan in the following and other cases: *Lambertson* v. *Case,* 245 Mich. 208; *In re Patterson's Estate, supra; In re Shumway's Estate, supra;* and *Toms* v. *Williams,* 41 Mich. 552.

Relating back to the date of testator's death, upon the completion of the administration of the estate and the turning of the estate over to the trustee named in the will, the eight heirs of testator, as devisees and legatees under the will, became vested with the rights of final distributees of the real and personal estate subject to the trust. The eight heirs heretofore mentioned, their heirs, devisees, legatees, grantees and assigns, are the owners of the real and personal estate, subject to the trust.

Defendants contend that plaintiffs are barred from claiming the benefit of the rule of property spoken of because of the pleadings and decree in the chancery case in 1920. That suit was brought by the trustee and by the guardian of a great grandson for the purpose of disposing of the questions arising upon the discovery that as to that portion of the estate situate in Minnesota the will was void, being in contravention of the law of Minnesota against perpetuities. Wellington Burt Hay, Jr., the only great grandchild of testator that was living at the time of testator's death, was made a party as representative of the class who would be distributees if they were determined as of the time of termination of the trust. The parties had in mind the following: The will was not as yet admitted to probate; the heirs had filed a contest; it would be futile to attempt to get the will to operate on the Minnesota lands; and the will might be construed to give the

great grandson, plaintiff, a distributive share if he were alive at the termination of the trust. It could not be known at the date of the chancery decree in 1920, by any reasonable process, that the great grandson would outlive the trusteeship and be *adjudicated to be* a distributee. It is inconceivable that Judge Snow, who signed the chancery decree, ever intended to make any adjudication to the effect that the great grandson, plaintiff, would be still alive at the expiration of the trust. So far as concerns the rights and interests of the great grandson and the class whom he assumes to represent, all that the decree actually means or can reasonably be considered to mean is that in the event the great grandson, plaintiff, shall be alive at the termination of the trust and if he *shall be determined* to be a distributee, his interests and the interests of the class he assumes to represent are not adversely affected by the agreement and its approval by the court. It is only reasonable to consider that such was substantially the whole intention of all the parties to that chancery suit, as respecting the "unborn." A great grandchild living at the termination of the trust would have a practically assured interest in the distribution under defendants' theory as to the meaning of "my legal heirs," but could be presumptively considered to have an interest under plaintiffs' theory also. The decree contains no express or implied adjudication that the legal heirs were to be determined at the termination of the trust. The agreement required the eight heirs to surrender their annuities, and that the annuities be cancelled; it gave the eight heirs $720,000 cash and the title in fee to the Minnesota mining lands. The agreement also provided a means of financing the payment of Federal and State inheritance taxes.

The order of the probate court of Saginaw county, May 24, 1922, assigned the residue of the estate,

"To the said Second National Bank of Saginaw, Michigan, as trustee under the provisions of the trust contained in and established by the said last will and testament of said Wellington R. Burt, with full power to handle, administer and dispose of the same   *   *   *   under the authority and direction of this court."

The order was never appealed from. By that order the probate court adjudicated the trust established by Mr. Burt's will to be a valid trust. Such order is not subject to collateral attack. *Chapin* v. *Chapin,* 229 Mich. 515. The trust is thereby adjudicated to be a lawful trust. Plaintiffs cannot be permitted to treat the trust otherwise. This ruling applies also to plaintiffs' claim that the entire trust is void, as contravening the statute of Minnesota against perpetuities.* In Minnesota are situated iron mines in which the deceased's holdings amounted in value to about $5,000,000 at the time of his death, the total holdings of his estate amounting to about $13,500,000 at that time. We also find against plaintiffs' claim that because more than a third of the estate (the Minnesota property) was taken out from under the operation of the will, the purpose of testator must be deemed frustrated, and that the trust being void as to Minnesota property, was void *in toto,* in support of which claim plaintiffs cite *In re Richards' Estate,* 283 Mich. 485, and *Gardner* v. *City National Bank & Trust Co., supra.* So far as Mr. Burt's will contravened the Minnesota statute, that matter was taken care of in the settlement agreement and chancery decree in 1920. The

---

* See Minnesota General Statutes, 1913, §§ 6687, 6688 (Mason's Minnesota Statutes, 1927, §§ 8067, 8068).—REPORTER.

heirs obtained the Minnesota property. The order of the probate court of May 24, 1922, assigning the residue to the trustee, adjudicated the validity of the trust, including the effect of partial frustration of the purpose of testator in establishing the trust. It follows that the testator is to be considered the settlor of the trust.

The heirs claim that because their agreement, in practical effect, set up the trust, they have the right to change their minds and cause the termination of the trust, as settlors. However, testator set up the trust in his will and at best the heirs can only claim the status of persons who cooperate after the trust has once been undertaken to be set up. Whether that matter can be said to aid them, or could be available to them as part of their other suit now pending on appeal in this Court, is a matter left for consideration in that suit. We determine that such cooperation on the part of the heirs does not give them sufficient ground to require the termination of the trust at this time and in this suit. In the other suit pending on appeal in this Court the heirs seek termination of the trust on other grounds. We do not, in this suit, determine the merits of their claim to terminate the trusteeship for reasons set forth in that litigation. (See *Hay* v. *LeBus, post,* 698.)

There remains the question of laches. In view of our determination that the heirs of testator took vested interests at his death, the group of persons referred to in the briefs as the "unborn," that is, those who under defendants' theory would be distributees and determined as heirs as of the time of the termination of the trusteeship, have lost nothing by the delay of plaintiffs in filing the bill. They never had anything to lose; they have expended nothing. However, the proper expenses and fees of

any appointee of a court on their behalf could be paid out of the trust under direction of the court having jurisdiction over the trustee. The trustee under the circumstances of this case does not acquire the rights of the distributees, by the lapse of time, and has no right to be heard on the subject of laches in this case.

The decree appealed from should be reversed. The decree of this court should establish the vested interests of the heirs determined as of the date of the death of testator, should establish the trust as valid as *res judicata,* and should deny a present termination of the trust on grounds not claimed in *Hay* v. *LeBus, post,* 698, now pending in this Court.

Each party having prevailed in part, no costs are allowed.


BUSHNELL, J., concurred with REID, J.


NORTH, J. In this case, which was submitted to this Court some months ago but in which additional briefs requested by the Court have been but recently filed, a question of primary importance is presented by appellants in the following words: ''Should the will be construed to grant plaintiffs and appellants a vested remainder?'' Mr. Justice REID's opinion answers this question in the affirmative. I am unable to agree in that result.

At the outset it should be noted that because of a proposed adjustment acceptable to the persons who are annuitants under the Burt will, their rights will not be affected by decision herein. In general the factual background of this litigation is sufficiently presented in my Brother's opinion, but his quotation from the will seems inadequate. Since the construction to be given to the Burt will must be

controlled by the testator's intent, if within legal limitation, as gathered from the four corners of the will, other provisions of the will than those noted by my Brother must be quoted. For that reason we quote the following:

"(2) I hereby appoint the Second National Bank of Saginaw, Michigan, as trustee and executor to manage my estate after my death, as herein provided. * * *

"(3) Said bank or trust company is to take charge of all my estate, real, personal and mixed, of which I may die possessed, as hereinafter provided. To manage and conduct said trust, created by this will, with full power, except as hereinafter limited; to sell, convey and lease any of the same and invest and reinvest the proceeds of any sale, as hereinafter provided, until the termination of the trust herein created.

"(4) First, the trustee and executor shall pay all my funeral expenses and all my legal debts."

Here follows provisions for a large number of annuities requiring payment by the executor or trustee of upwards of $90,000 each year. As to such annuities the will provides:

"(14) * * * But shall the income for any year not be sufficient to make all the payments herein provided, then in that event, a sum sufficient shall be taken from the principal of the estate so that all payments herein provided may be made in full. * * *

"(16) * * * All annuities and all payments provided for in this will are limited and conditioned to continue only during the period of the trust created by this will. At the expiration of the trust, as hereinafter provided, all annuities and payments shall cease. * * *

"(17) In making the foregoing bequests it is my intention that the amounts herein provided to be

paid, shall be paid directly and only to the beneficiaries herein named, or their proper guardian, and that no legal title is passed to them that shall be subject to garnishee or attachment by creditors, or that they can make any transfer of, either by order or assignment, or any other document, which could be binding upon or accepted by the trustee and executor. * * *

"(18) All funds arising from income from securities belonging to the estate, or from the payment of securities themselves as they may be paid or as they may become due, or from the proceeds of the sale, of anything belonging to the estate, or from royalties from iron mines, or from any other source, after making all the payments herein provided, the surplus funds remaining on hand , shall be invested every 30 days, as nearly as may be, by the trustee and executor, in United States government bonds, State Bonds or bonds (having other specified requirements). * * *

"(19) The iron mines, iron mining stocks or interests in iron mines located in the State of Minnesota, of which I may die possessed, shall not be sold or in any way encumbered by the trustee and executor. All the iron mine leases in Minnesota shall continue as now leased. All other real estate shall be disposed of from time to time as the opportunity occurs, at the best prices obtainable, and the proceeds of such sales shall be invested in the manner hereinbefore provided for surplus funds.

"(20) The trust herein created shall continue for and during the period of the lives of my two grandsons, Wellington Burt Hay and Wellington R. Burt. Upon the death of the last survivor of these two grandsons, all the real estate remaining in the trust shall be distributed among my legal heirs, but all personal property shall continue in the trust for 21 years after the death of my last surviving grandchild that shall be living at the time of my death, and shall be subject to the terms and conditions here-

inbefore set forth. At the end of 21 years after the death of my last surviving grandchild that shall be living at the time of my death, the trust shall terminate and all the funds of every name and nature remaining in the trust shall be distributed to my legal heirs.

"(21) As compensation for the carrying out of the provisions herein contained the trustee and executor is to have ½ of 1 per cent. on all moneys received from the estate to cover all their services for receipts and disbursements (with a subsequent provision for a minimum annual fee of $3,500). * * *

"(22) The trustee and executor shall make a yearly report in detail to my son, George R. Burt, as to the condition of the estate."

The remaining provision in the will is for a successor trustee who:

"Shall carry out the trust to its final termination, in accordance with the terms and conditions herein specified, application for such appointment being made by any one who may be interested as a beneficiary or final distributee."

Surely no one could successfully contend, nor is it asserted by appellants (with whom we herein include cross-appellants), that the testator in the instant case did not create a testamentary trust; but appellants assert it was not a "true trust," evidently meaning it was only a trust of powers granted to the trustee. In this particular appellants point out that there is not contained in the Burt will words by which the testator expressly passed title of his estate to the trustee. And for that reason, as stated in appellants' brief: "It is plaintiffs' claim that the remainder vested, at death of testator, in his heirs and did not remain contingent upon survival at the respective times of distribution." And appellants, referring to testator's use in his will of the words

"my legal heirs," contend that testator's legal heirs should be held to be those persons who were such heirs at the time of testator's death. Unquestionably such contention would be sound if Mr. Burt had died intestate; but such may or may not be the rule to be followed in the event a deceased person has disposed of his estate by will. In the latter case the terms of the will govern. We quote the following from an extensive note in 33 L. R. A. (N. S.) p. 2:

"It is a general rule of testamentary construction, so universally recognized as to render superfluous a full citation of the cases which support it, that, *in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will,* read in the light of the surrounding circumstances, the class described as testator's heirs * * * to whom a remainder or an executory interest is given by will, is to be ascertained at the death of the testator. * * *

"The rule above stated, as is said in *Heard* v. *Read,* 169 Mass. 216 (47 N. E. 778), 'is not a rule of substantive law, but a rule of interpretation, which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in his will; and it never should be used to defeat what, from the whole will, appears with reasonable certainty to have been his intention.'

"It is a rule of mere construction, which the court cannot apply if the context excludes it. *Valentine* v. *Fitzsimons,* (1894) 1 I. R. 93.

"The rules of construction that the word 'heirs' in a will is usually construed to mean those who are such at the time of the testator's decease, and that estates created by devise are to be held to be vested rather than contingent, must give way to the controlling rule of interpretation that the intent of the testator is to govern if it does not conflict with the rules of law."

A headnote of *Carr* v. *New England Anti-Vivisection Society,* 234 Mass. 217 (125 N. E. 159), reads:

"In the construction of a will, the general rule, that, where there is a limitation over after a life estate (in the instant case after termination of the trust) to a class designated as the heirs at law of the testator, such heirs at law are to be determined as of the time of the testator's death, is not to be followed if it defeats the intention of the testator."

Thus on the record in the instant case it must be determined whether by the terms of the testamentary trust the trustee took title in trust to the assets of the estate, and as bearing upon the determination of that issue it must be ascertained what was the meaning and intent of Mr. Burt by his use of the words "my legal heirs" in paragraph 20 of his will. In will cases the primary rule of construction and the primary function of courts is to ascertain from the four corners of a will the intent of the testator and, if legally possible, that intent must prevail. *Kirsher* v. *Todd,* 195 Mich. 297; *Michigan Trust Co.* v. *Driver,* 270 Mich. 698. The Burt will discloses the following.

(1)   That the testator when he made his will fully had in mind each of those persons who would have taken his estate had he died intestate. He named each of them in his will. But he did not give by his will to any of them direct title to any part of his estate. Instead, for each of them he provided substantial annuities—$30,000 for his only living son, $5,000 for each of his four daughters, and $5,000 for the widow and $2,000 to each of the three daughters of testator's deceased son, Charles W. Burt. For reasons with which we have no concern, testator by a codicil revoked the legacy at first pro-

vided for his daughter Marion, and thus excluded her from participating in his estate, unless she should be living at the time of distribution.

(2) By his will the testator provided for payment of annuities out of the corpus of his estate, if the income proved inadequate to make such payment.

(3) Paragraph 16 provides specifically for termination of all annuities upon the expiration of the trust; not that the trust should terminate upon the expiration of the annuities.

(4) It is somewhat significant that by paragraph 17 of his will the testator attached spendthrift trust provisions to each of the provided annuities.

(5) The will fully empowered the trustee "to sell, convey and lease" all or any portion of the testator's estate (excepting the Minnesota iron ore lands which are no longer a part of the estate), and to invest and reinvest any funds of the estate.

(6) As just above indicated, the trustee was not given power to dispose of the Minnesota iron ore lands; and the fair inference is that the testator did not intend that anyone having an interest in his estate should have the right to dispose of the Minnesota lands until the time came for distribution of testator's real estate holdings.

(7) Then as to the duration of the trust the testator in paragraph 20 of his will provided as to his real estate holdings it "shall continue for and during the period of the lives of my two grandsons, Wellington Burt Hay and Wellington R. Burt;" and as to testator's personal property he provided: "But all personal property shall continue in the trust for 21 years after the death of my last surviving grandchild that shall be living at the time of my death."

Each of the above testamentary provisions, especially the one last above noted, is, to say the least, persuasive of the conclusion that the testator did not

intend to leave his estate to the persons who were his heirs at the time of his death; and taken collectively the above noted aspects of the will seem decisive of that conclusion, especially as no provision of the will leads at all convincingly to an opposite conclusion. We think it clearly follows that, reading the will as a whole, the testator in using in paragraph 20 of his will the expression "my legal heirs," meant those persons who would be his heirs at law at the termination of the respective phases of the trust.

If it were deemed at all necessary, it might be noted as bearing further upon the above phase of this litigation that the record in the instant case is somewhat unusual in the following particular. After settlement of a prospective contest of the will it was admitted to probate in August, 1920, the estate was probated, its assets assigned to the trustee under the will, and the trustee continued thereafter to execute the trust for more than 20 years prior to the commencement of the instant suit; and in all that time appellants herein or those with whom they are in privity acquiesced in the execution of the trust as herein construed. And during that time appellants who participated in various legal proceedings concerning the Burt estate were represented by able counsel. It is a fair inference from this record that during the above noted term of years appellants acquiesced in the construction of the will for which defendant-appellees now contend.. In our view of the record we consider it unnecessary to pass upon the legal consequence of the order of assignment made in the probate court following the executor's final account, wherein the order, from which no appeal was taken; provided:

"That all the rest, residue and remainder of the assets of the estate, real and personal (as modified by the settlement agreement),   *   *   *   be and the

same are hereby assigned and distributed to the said Second National Bank of Saginaw, Michigan, as trustee under the provisions of the trust contained in and established by the said last will and testament of said Wellington R. Burt, with full power to handle, administer and dispose of the same according to the terms and provisions of said will as modified by said settlement agreement, under the authority and direction of this court.''

However, I am in accord with my Brother's statement concerning the probate court's order of assignment to the trustee wherein he says:

''By that order the probate court adjudicated the trust established by Mr. Burt's will to be a valid trust. Such order is not subject to collateral attack. *Chapin* v. *Chapin,* 229 Mich. 515. The trust is thereby adjudicated to be a lawful trust. Plaintiffs cannot be permitted to treat the trust otherwise.''

But it may be noted appellees further contend that the above order assigning the assets of the estate under the will to the trustee vested title to such assets in the trustee and is *res judicata* of that phase of this litigation. We are about to dispose of that issue on other grounds.

In the light of the construction of the will, as above indicated, it remains to be determined whether, notwithstanding the will does not contain words specifically vesting title to testator's estate in the trustee, title thereto as a matter of law did vest in the trustee, or whether it vested absolutely or as a contingent or defeasible title in those persons who at the time of the death of Wellington R. Burt were his heirs at law. This phase of the law has been considered by numerous text writers and courts of last resort. Without attempting to exhaust the field of authority, we deem it sufficient to note the

following. We think it must be held that the follow-
ing authorities are applicable to the instant case in
consequence of the terms of the will which in its
general effect, subject to final distribution, gave to
the trustee the power during the term of the trust
to completely control the management, use and sale
of the assets of the estate (with the exception of the
Minnesota iron ore lands which are no longer a part
of the estate) as the testator himself, had he con-
tinued to live, could have done, subject only to pay-
ment of the annuities provided in the will. Under
such circumstances, in view of the authorities about
to be noted, it must be held that under the terms of
the Burt will title to the corpus of his estate, as a
matter of law, vested in the trustee.

"If the will, when taken as a whole, shows an
intention to devise or bequeath property to a trus-
tee, full effect will be given to such intention al-
though the will contains no express words of devise
or bequest." 3 Page on Wills, 3d (Lifetime) Ed.,
p. 520, § 1189.

"If he (testator) has named a person in that in-
strument and has directed him to carry out all or
a portion of the provisions which have been made
for others therein, and the person thus named can-
not execute such provisions of the will, except the
legal title to the property shall be vested in him as
trustee, then that person will be a trustee by im-
plication, though there may have been no direct
devise of the legal title to him and the word 'trus-
tee' or 'trust' was not used." 2 Underhill on Wills
(1900 Ed.), p. 1111, § 781.

Similar statements of the law will be found in
1 Perry on Trusts & Trustees (7th Ed.), p. 549;
2 Schouler on Wills, Executors and Administrators
(6th Ed.), p. 1519; and Thompson, Construction of
Wills, §§ 560 and 564.

"It is not essential that the words 'trust' or 'trustee' should be found, nor that there should be a direct devise in terms to the trustee.  *  *  *  It is sufficient if the intention to create a trust under the statute can be fairly collected from the instrument, and what is implied from the language used is, as in other instruments, deemed to be expressed.

"The will of Mr. Striker did more than grant to his executors a power. It created a trust estate vested in them as trustees. Such a result necessarily follows from its terms." *Striker v. Daly*, 223 N. Y. 468 (119 N. E. 882).

Another decision in a case having a quite similar legal aspect is reported in *Woodward v. James*, 115 N. Y. 346 (22 N. E. 150). Speaking of the widow of deceased, who was named as executrix, the court said:

"And she, as executrix, was to have the management, direction and disposition of the property and income 'as devised.' She was to have its management and direction. That involved the collection and receipt of the income and rents and profits of the estate, the investment of its funds and the leasing of its lands. It involved also the payment by her, out of the income, of the charges existing and thereafter to accrue during her life. She was to have the disposition of the property 'as devised,' that is, in accordance with the provision of the will, and so the duty was confided to her, as it seems to me, of ascertaining and paying over every year during her life the balance of the income which might be due to the heirs.

"We are of the opinion that the authority and duty thus conferred and imposed upon the widow respects the whole estate and requires that the legal title should be vested in her, as trustee, for the term of her life. It is true that the testator did not, in direct words, devise to her such an estate, or use the expression 'trusts' or 'trustee.' That fact is one to

be noted and weighed, but does not prevent the creation of a trust by implication where the exigencies of the situation require it, and such an intention is indicated.''

The supreme court of Massachusetts has said:

''Where there is no express devise to the trustees, it must appear that it is the intention of the testator that they shall take an estate, *and where from the nature of the duties to be performed, it appears that the taking of an estate is necessary,* the intention of the testator will be presumed.'' *Fay v. Taft,* 66 Mass. (12 Cush.) 448, 450.

In the instant case the testamentary trustee was expressly given the power to invest and reinvest the funds of the estate and to dispose of real property of the estate. Hence a headnote to the case of *Booth v. Krug,* 368 Ill. 487 (14 N. E. [2d] 645, 117 A. L. R. 1193), is pertinent to the instant case. The Illinois headnote reads:

''The presumption against intestacy is so strong that courts will adopt any reasonable construction of a will to avoid it, and it cannot be said there is a partial intestacy because the testator did not specifically devise his real estate to his trustees where the concluding paragraph of the will names certain parties as trustees and executors 'to carry out and execute the provisions of this will.' ''

In *Webster v. Thorndyke,* 11 Wash. 390, 398 (39 Pac. 677), the court said:

''In our opinion the intention of the testator can be gathered from the language used (in the will), and, if it can, it is the duty of the court to see such intention is given effect. The appellants call attention to the fact that there are no technical words which show an intention to pass the title in the real estate to the executor or to any other person. This is

probably true, but the fact that such words are not made use of is immaterial, if the intent to pass the title is apparent. This intention may not clearly appear from any one clause or provision, but we think it does appear from the language used when construed as a whole."

Again in *Sherlock* v. *Thompson,* 167 Iowa, 1 (148 N. W. 1035, Ann. Cas. 1917 A, 1216), the court held:

"Upon the proposition  *  *  *  that, where a trust is intended, the courts will honor it although words of devise in trust are lacking, and that equity does not allow a trust to fail for lack of a trustee holding legal title, see  *  *  *  (numerous cases cited)."

See, also, *Estate of McCray,* 204 Cal. 399 (268 Pac. 647); *Ryder* v. *Lyon,* 85 Conn. 245 (82 Atl. 573), which together with numerous other cases which might be cited are in accord with the holdings in the authorities above noted.

If, as must be done, the will in the instant case is read and construed as a whole, and consideration given to the powers and duties of the trustee, the inevitable conclusion follows that title in trust to the assets of the Wellington R. Burt estate vested in the trustee. Appellants' contention to the contrary is not tenable.

In arriving at the above conclusion I have not overlooked the supposititious reasons which have led my Brother to an opposite conclusion. We are not concerned with the advisability or wisdom of the testator's will. If, as we hold the provisions of the will are within the requirements and limitations of law, the testator's disposition of his estate, as it appears from the four corners of his will, must be sustained.

My Brother comments on paragraph 22 of the will wherein it is provided the trustee and executor shall

make yearly reports in detail to the testator's son, George R. Burt, as to the condition of the estate. From this it appears to be reasoned that the testator could not have had in mind the continuance of the trust as to real estate until the death of the survivor of two named grandsons, and as to the testator's personal property until 21 years after the death of the last survivor of testator's grandchildren who were in being at the time of his death. To so hold is to delete from the will the definitely expressed provisions of paragraph 20. And further, if the will were so construed, it would deprive from participation in the ultimate distribution of this estate the persons whom the testator definitely selected as his ultimate beneficiaries.

In view of this circumstance I cannot agree with my Brother wherein under his holding he says "All the provisions of the Burt will are given effect by applying the established rule of property heretofore spoken of." And obviously it would be a violent assumption that the testator who, as my Brother states, is assumed to have been "a man of business acumen," did not thoroughly appreciate there was little probability that his son, George R. Burt, would outlive the last of testator's grandchildren in being at the time of his death. Nor do I find any particular force in my Brother's reasoning that the estate will suffer unless there is someone in being at all times who has a present interest in the estate. As a matter of fact that condition has prevailed since the death of George R. Burt in 1930, and we know of no complaint of maladministration of the estate in the meantime. And it is a far-fetched assumption that there will come a time when there will be no living person who does not have at least a prospective personal interest in the estate. In the present case there are 20 or more appellants who are assert-

ing such an interest. Nor can it be said that such prospective or contingent interest is remote. For example, the real estate holdings of the Burt estate might be subject to distribution in the very near future upon the death of the survivor of the two grandsons named in paragraph 20 of the will.

It is quite unnecessary to review or comment upon the holding in the numerous cases cited in my Brother's opinion, because it may be admitted that such holdings are sound in law when applied to a proper factual background; but they are not applicable to the instant case in view of the construction that we herein place upon the will of Wellington R. Burt, deceased. For example, in arriving at the conclusion that those who were the legal heirs of Wellington R. Burt at the time of his death "took vested estates," Justice REID relies much upon our decision in *Re Shumway's Estate*, 194 Mich. 245 (L. R. A. 1918 A, 578). But that case materially differs from the instant case because in the Shumway will there was no semblance of a provision whereby the testator sought to create a ·trust charged with the management and control of his estate, the sale of real property, the investing and reinvesting of estate funds, or the paying of numerous annuities presumably extending years into the future, as in the instant case. The foregoing comment relative to the *Shumway Case* is likewise applicable to *Rood* v. *Hovey*, 50 Mich. 395, *Porter* v. *Porter*, 50 Mich. 456, and *In re Patterson's Estate*, 227 Mich. 486, cited and relied upon by my Brother in reaching his conclusion.

Since, as we hold, that under the Burt will those who were his heirs at law at the time of his death did not take a vested title in the assets of the estate, but on the contrary title to those assets by the terms

of the will vested in trust in the trustee, cases cited by my Brother, wherein a different factual condition existed, are not at all controlling herein. Instead, the following applies:

"A consideration of our own cases establishes the rule that where upon an examination of the will it clearly appears that it was the intent of the testator that the estate should vest only on the happening of a particular event such intent will govern." *In re Churchill's Estate,* 230 Mich. 148.

Headnotes of the quoted case read:

"Although the vesting of estates at the earliest possible moment is favored in the law, said rule must not be applied to frustrate the manifest intent of a testator in disposing of his estate by will.

"In the construction of a will, the intent of the testator must govern, and when the intent is found from the four corners of the instrument the duty rests upon the court to effectuate it if it may lawfully be done."

Justice FELLOWS, who wrote for the Court in the *Churchill Case,* cited *Fitzhugh* v. *Townsend,* 59 Mich. 427 and *In re Lamb's Estate,* 122 Mich. 239, which are in full accord with our quotation from the *Churchill Case.* To the same effect see, also, *Plant* v. *Weeks,* 39 Mich. 117; *Garman* v. *Hawley,* 132 Mich. 321; and *Hunter* v. *Hunter,* 160 Mich. 218.

The plain, and we think the inescapable, intent and purpose of Wellington R. Burt's will was quite impossible of fulfillment except by means of a trust wherein title to the estate assets was vested in the trustee. We are convinced that such was his clear intent. It is a fair inference from the will of Wellington R. Burt that in postponing distribution of his large estate he sought ultimately to do the greatest

good to the greatest number of his descendants, rather than to greatly enrich those persons who were his heirs at law at the time of his death; and as to each of whom he made ample provisions by way of substantial annuities.

Careful consideration brings us to the conclusion that by the terms of his will Wellington R. Burt vested title in trust to the assets of his estate in the trustee named in the will; that as yet none of appellants have become possessed of a vested right in the remainder of the estate at the termination of the trust, and that distribution of the real estate holdings should be made, under the terms of the will, upon the death of the survivor of the two grandsons named in paragraph 20 of the will, such distribution to be to the then legal heirs of Wellington R. Burt. Further, that the distribution of the personal assets of the estate shall be made as of the time of the death of the last surviving grandchild of Wellington R. Burt who was in being at the time of his death, and such distribution shall be among the then legal heirs of Wellington R. Burt.

I am in accord with my Brother's holding that the decree of Judge Snow entered in the circuit court in chancery of Saginaw county in 1920 "contains no express or implied adjudication that the legal heirs (of the Burt estate) were to be determined at the termination of the trust." I also agree, contrary to appellants' contention, that notwithstanding the fact by operation of law the Minnesota property "was taken out from under the operation of the will," the Burt will was not thereby rendered "void *in toto*." In view of our holding herein, we deem it unnecessary to comment upon the merit of appellees' contention that appellants are barred from obtaining relief in the instant case in consequence of laches, waiver or estoppel.

In addition to the issues hereinbefore considered, appellants present the following: "May the mortgage trust be terminated and distributed?" The appellants contend the answer should be in the affirmative. The circumstances which, after the death of Wellington R. Burt, gave rise to the so-called mortgage trust and the rights and obligations incident thereto are in such great detail and so complicated that we deem it unnecessary to attempt to review them herein. It is sufficient to note that appellants' claim to relief in this particular, is urged on the assumption that they have a vested remainder in the assets of the Burt estate and are presently entitled to have such assets distributed. Since in that regard our holding herein is adverse to appellants, it follows they are not entitled to relief incident to the trust mortgage transaction.

The decree entered in the circuit court dismissing plaintiff's bill of complaint is affirmed, with costs to appellees.

CARR, C. J., and BUTZEL, SHARPE, and BOYLES, JJ., concurred with NORTH, J. DETHMERS, J., did not sit.