HADLEY *v.* HENDERSON.

1. WILLS—CONSTRUCTION—ESTATE DEVISED—MODIFICATION OF AN
   ABSOLUTE FEE.

   A bequest in one paragraph of testator's will of one-third of
   his real and personal property to his wife for her natural
   life, and after her death to "revert" to testator's son, con-
   strued in connection with another paragraph bequeathing
   all of his real and personal property not otherwise disposed
   of to said son and his heirs, but providing, in case of his
   death without issue, how said property should be dis-
   posed of, and *held*, that, the wife having died before
   testator, the son took the entire estate, including the one-
   third, subject to the remainder over in the event that he
   died without issue.    FELLOWS, J., dissenting as to the one-
   third.

2. ESTATES—FUTURE ESTATES—VESTED—CONTINGENT—DISTINCTION
   —STATUTES.

   Under 3 Comp. Laws 1915, § 11531, future estates are vested
   when there is a person in being who would have an
   immediate right to the possession of the lands upon the
   ceasing of the intermediate or precedent estate, and they
   are contingent whilst the person to whom, or the event
   upon which, they are limited to take effect remains un-
   certain.

3. WILLS—CONSTRUCTION—CONTINGENT ESTATES—STATUTES.

   Bequests to a daughter and a niece of testator, to take effect
   in case testator's son died without issue, were but contin-
   gent interests, under 3 Comp. Laws 1915, § 11531, and
   where their deaths without issue occurred before that of the
   son, they lapsed and became part of the residuary estate,
   under the provisions of the will.

4. SAME—ISSUE OF DECEASED LEGATEE TO TAKE—STATUTES.

   A legacy to testator's sister, to take effect in case testator's
   son died without issue, where the sister died before the
   testator leaving two daughters who survived the son, was
   saved to said daughters by 3 Comp. Laws 1915, § 13793, and
   on the death of the son without issue it vested in them.

5. APPEAL AND ERROR—PARTY NOT APPEALING.
    Where plaintiffs and certain of the defendants failed to
    appeal, the Supreme Court is not at liberty to change or
    modify in their favor the decree of the court below.

Appeal from Genesee; Black (Edward D.), J.   Submitted January 4, 1921.   (Docket No. 9.)   Decided June 6, 1921.

Bill by Arthur O. Hadley, individually and as administrator *de bonis non* of the estate of Emmaus G. Owen, deceased, and others, against Marion J. Henderson, Ida Alban and the Michigan Home Missionary Society for the construction of a will.   From a decree for plaintiffs, defendant society appeals.   Modified and affirmed.

*Perry & Lynch,* for plaintiffs.

*D. C. Griffin,* for defendants Henderson and Alban.

*Clark C. Wood,* for defendant society.

SHARPE, J.   Emmaus G. Owen, a farmer who had lived for many years near Grand Blanc, in Genesee county, died on August 28, 1882.   He left a last will and testament, made on April 23, 1878, the material portions of which read as follows:

"And first, I do give, devise and bequeath unto my beloved wife, Cynthia M. Owen, the use of one-third of all the real and personal estate of which I shall die possessed and seized (after the payment of all my just debts and funeral expenses) to have and to hold the same for the term of her natural life, and after her to revert to Charles C. Owen, my son, and it is hereby declared to be my will that my daughter, Mary E. Hebbard, have one thousand dollars, as follows, to wit: two hundred dollars to be paid her at one year after my decease and two hundred dollars annually thereafter (without interest) until it is paid.

"I give and bequeath to the children of Martha E. Hadley (my daughter deceased) as follows, to wit: Arthur O., Bertha and Edward Hadley one dollar each to be paid at my decease.

"And I hereby bequeath all the real and personal estate of which I may die possessed; except that hereinbefore mentioned, to my son, Charles C. Owen, and his heirs. If in case the said Charles C. Owen dies without issue, it is my will that the above property be disposed of as follows, to wit:

"I will to my daughter, Mary E. Hebbard, three thousand dollars, and my sister, Susan E. Henderson, two thousand dollars, and to my niece, Alice Henderson, one thousand dollars, and the residue, if any there be, to the Home Missionary Society, to be applied in helping the said society in the State of Michigan."

Cynthia M., the wife, died prior to the death of the testator, as did also the sister, Susan E. Henderson. Mrs. Henderson left her surviving three daughters, Marion J. Henderson, Ida Henderson (two of the defendants herein), and Alice Henderson, who died in February, 1913, unmarried and intestate. Mary E. Hebbard died in May, 1909, testate. Under her will, whatever interest passed to her under her father's will now belongs to the plaintiffs in this case. Charles C. Owen, the son, died March 3, 1916, unmarried, intestate, and without issue. The bill in this case is filed to obtain a construction of the will. The questions presented are thus stated in the brief of counsel for appellant:

1. Did the title to the one-third of the estate, the use of which was given by the testator to his wife for life, pass at her death to Charles C. Owen free from the gift over in the third paragraph of the will?

2. Did the legacies to Mary E. Hebbard, Susan E. Henderson and Alice Henderson lapse by reason of their death before that of Charles C. Owen and thus pass to the residuary legatee?

3. Was the legacy to Susan E. Henderson saved to her issue by the provision in section 13793, 3 Comp. Laws 1915?

The trial court held, *first,* that on the death of the testator an absolute estate in fee vested in Charles C. Owen to the one-third interest in the estate and now belongs to plaintiffs as his heirs at law; *second,* that the legacies to Mary E. Hebbard, Susan E. Henderson and Alice Henderson vested at the testator's death, subject to be divested in case Charles should leave issue him surviving, and were subject to alienation or descent to the heirs of such legatees; and, *third,* that the legacy to Susan E. Henderson was saved by the statute and passed to the two individual defendants under her will. He further found that any residue passed to the defendant the Michigan Home Missionary Society. From the decree entered, the missionary society appealed.

1. The bequest to his wife was just what she would have taken had no will been made. The bequest to his daughter, Mrs. Hebbard, was payable in small annual amounts, the payment of which would not probably affect the corpus of the estate. It is apparent that he desired his son Charles to have his entire property, subject to the bequests to his wife and Mrs. Hebbard, as an estate in fee, should he marry and have children. The trial judge found that at the time the will was made, in 1878, the son Charles "was somewhat along in years, beyond the average time that men take to themselves a wife." The testator deemed it necessary for him to consider the probability that Charles would die without issue and to provide for the disposition of the estate bequeathed to him in such event. The residuary clause is thus accounted for. We are impressed from these considerations that there was no intent on his part to make any bequest to Charles which he might convey or dispose of by will. There was no apparent reason why he should provide for him an estate in fee in a one-third interest and a life estate in the remaining two-thirds. Such a construction should not be given to the bequest to him, unless rendered imperative by the

language employed. The purpose of the first paragraph was to provide for his wife. This he did by securing to her the use of one-third of his entire estate during her lifetime. What should become of this one-third interest after her decease? He desired it to go to Charles and provided that after her death it should "revert" to him. Stress is laid upon the use of this word "revert." It is suggested that as used it simply means to "go to," "pass to," or "become the property of." The usual legal definition is "to return to the proprietor after the termination of a particular estate granted by him." Had his wife survived the testator, as he no doubt expected she would at the time the will was made, Charles, on the death of his father, would have taken the entire estate, at least for his lifetime, subject to the life interest of his mother in the one-third thereof, which would "revert" to him at her death. We feel that no violence is done in so construing this bequest and that on testator's death the entire estate passed to Charles, subject to the remainder over in the event that he died without issue.

2. Charles having died without issue, the will provides for payment of three specific legacies and that the residue, if any, shall go to the missionary society. The first of these legacies was to Mary E. Hebbard. She died in 1909, before the death of Charles. It is the claim of the plaintiffs that this legacy vested on the death of the testator, subject to being divested on Charles' leaving issue him surviving, and, having vested, it was descendible, devisable and alienable in the same manner as estates in possession, while the appellant claims that the legacy was contingent, did not vest during the lifetime of the legatee and therefore lapsed and became a part of the residuary estate.

We must first look to the will for guidance. The bequest is to the individual, with nothing to indicate an

214—Mich.—11.

intention that on the death of the legatee before Charles the legacy should pass or be payable to her heirs, assigns or personal representatives. We must therefore apply the rules of construction applicable to such bequests. Much has been written on the subject of vested and contingent estates and interests. The difficulty is in applying the rule of determination, on which there is perhaps less disagreement than would be expected, to the particular language in the will. Mr. Rood in his work on Wills, § 581, says:

"An estate vests when and as soon as there is a person in being and ascertained who has an unconditional right to enjoyment upon the termination of the preceding estates *which are all sure to terminate* or on the happening of any event *that is sure to occur;* but till these requirements concur no estate can vest."

See, also, 2 Redfield on Wills (3d Ed.), p. 217. This is but in effect the provision of our statute (3 Comp. Laws 1915, § 11531):

"Future estates are either vested or contingent:

"They are vested when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate;

"They are contingent whilst the person to whom, or *the event upon which they are limited to take effect, remains uncertain.*"

(The italics in both of these quotations are ours.)

Applying the rule thus stated, we feel constrained to hold that the legacy to Mrs. Hebbard did not vest during the lifetime of Charles, owing to the uncertainty as to whether he would die without issue. The bequest to her was only made "in case the said Charles C. Owen dies without issue," and until that event occurred she had but a contingent interest whose existence was wholly dependent upon an uncertain event which did not occur during her lifetime. The death of Charles was not the time fixed for payment of the legacy to her,

but his death without issue was the uncertain event on which her right to the enjoyment of the legacy depended. A legacy may vest though the enjoyment be postponed, but it can not vest until that upon which its right of enjoyment depends actually does occur. It is the uncertainty as to whether the time will ever arise at which she will be entitled to receive that prevents the vesting. Under the will, at the death of his mother Charles became possessed of the fee in all his father's property, defeasible at his death without issue. But until his death, the entire estate was vested in him and the interest of Mrs. Hebbard in the legacy bequeathed to her was but a contingent one which could not vest until his death and then only in the event that he died without issue.

We think the conclusion reached is well supported by our own authorities. In *Fitzhugh* v. *Townsend*, 59 Mich. 427, the will provided that the income of the estate of the testatrix should be paid to her granddaughter Elizabeth, and further:

"If, at her decease, she leaves lawful issue surviving her, I devise and bequeath the whole of my said residuary estate to such issue."

In the event of her death without issue certain other bequests were made and the residue was to be—

"equally divided among all my brothers and sisters, and the children of such of them as shall be no longer living, so that the children of each of the deceased shall take the share, to be equally divided among them, if there be more than one, to which the deceased parent would have been entitled if living."

The testatrix died in 1869 and Elizabeth in 1884 without issue. Samuel, a brother of testatrix, died before her, leaving a son, William, who died before Elizabeth. William left a will devising "his prospective and contingent share" and his executors made claim under it. The court held that—

"There was no vested estate until the death of the granddaughter. No interest passed to William Addison Fitzhugh by the terms of the will, except a contingent estate that perished with him, if he died before the granddaughter."

It was there urged that under the statute (now 3 Comp. Laws 1915, § 11553) which provides that "Expectant estates are descendible, devisable and alienable, in the same manner as estates in possession," William's expectant interest or estate was properly disposed of by him by his will. In answer to this claim the court said:

"Granted; yet it is equally true that William Addison Fitzhugh could grant or devise no better or greater estate than he himself held; and any alienation or devise made by him would be defeated and destroyed by the same contingency which would have defeated his interest had he not disposed of it.

"The only effect of the statute is this: It enabled William Addison Fitzhugh, by his will or deed, to put another in his place, so that if the contingency arose by which William Addison would himself have taken had no transfer been made by him, then, in such case, the party standing in his place would take in his stead.

"The estate taken by William Addison Fitzhugh was a contingent one, liable to be defeated by the happening of either one of two events, to wit, the death of the granddaughter, Elizabeth Fitzhugh Birney, with issue surviving her, or his own death before the decease of the said granddaughter."

In *Mullreed* v. *Clark*, 110 Mich. 229, the testator devised his real estate to his son James with the provision:

"If James Phillips should die without heirs, then my real and personal estate is to go to my two daughters Mary Phillips and Jane Phillips; but if Mary or Jane should die without heirs, then their share to go to the other sister."

The court held:

"James therefore took the fee, defeasible at his death

without issue living at that time. At his death the fee, by the terms of the will, was cast upon the sisters Mary and Jane. They having died without issue, 'the other sister' named in the will was Elizabeth Clark, who was the only sister of Mary and Jane living at the time the will was made, and she consequently took the fee."

See, also, *Markham* v. *Hufford,* 123 Mich. 505, 510 (48 L. R. A. 580), wherein, in holding that a bequest had not vested, it was said:

"The provision cannot be distinguished in principle from any other bequest depending upon the happening of an uncertain event."

We feel constrained to hold that on the death of Mrs. Hebbard the legacy, provided for her in the will, lapsed and became a part of the residuary estate. What has been said relative to the legacy to Mrs. Hebbard applies with equal force to that to Alice Henderson.

Susan E. Henderson died before the testator. Counsel for the defendants Marion J. Henderson and Ida Alban, her daughters, insist that, even if the above rule be applied, the legacy to her is saved to them by the provision in section 13793, 3 Comp. Laws 1915, then in force, which reads as follows:

"When a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will, in the same manner as the devisee or legatee would have done, if he had survived the testator; unless a different disposition shall be made or directed by the will.",

The language of this statute is plain and we think easily understood. Fairly interpreted, it provides that the issue of the deceased devisee or legatee shall stand in his or her place or stead and be entitled as though themselves named as beneficiaries in the will itself. They are to take the estate, in this case legacy, in the

same manner as Mrs. Henderson would have taken it had she survived the testator. On her death the statute reads into the will a legacy to her daughters as though they had been specifically named therein. The legacy did not become a part of her estate, but her issue became direct beneficiaries. *Strong* v. *Smith,* 84 Mich. 567; *Rivinett* v. *Bourquin,* 53 Mich. 10; *Mann* v. *Hyde,* 71 Mich. 278. We have not overlooked the case of *Eberts* v. *Eberts,* 42 Mich. 404. No construction of this statute was there involved. As these children of Susan survived Charles, the legacy to their mother vested in them at his death and they are entitled thereto under the terms of the will.

The trial court found that the legacy of $1,000 to Mary E. Hebbard had been paid and so decreed. The decree also provides that the residue or remainder of the estate, after payment of the debts and legacies, passed to the appellant, the Michigan Home Missionary Society. No appeal was taken by the plaintiffs or the individual defendants. We are not at liberty to change or modify the decree in their favor. *Kellogg* v. *Kellogg Corn Flake Co.,* 212 Mich. 95, and cases cited.

It follows from the conclusions reached that the son Charles took the entire estate for his lifetime upon the death of his father. That the legacies to Mrs. Hebbard and Alice Henderson lapsed. That the legacy to Susan E. Henderson is payable to her daughters, the defendants Marion J. Henderson and Ida Alban. That, subject to the payment of such legacy, the residue of the estate belongs to the Michigan Home Missionary Society.

As thus modified, the decree will be affirmed. The costs on the trial below and on this appeal will be paid out of the estate of Emmaus G. Owen.

STEERE, C. J., and MOORE, STONE, CLARK, and BIRD, JJ., concurred with SHARPE, J.

The late Justice BROOKE took no part in this decision.

FELLOWS, J. (*dissenting*), I agree with Justice
SHARPE in his disposition of the second and third
questions involved in this case. I am unable to agree
with him in the disposition he makes of the first one.
I will briefly state my reasons. Before a will or other
instrument is open to construction by us we must first
find it to be ambiguous. If no ambiguity exists it is
not open to construction—there is nothing to construe.
By testator's will he first disposed of one-third of his
estate, what is frequently called by laymen "the
widow's third." I think the language used clearly gave
the widow a life use and the fee to Charles subject to
such life use. A bequest of a thousand dollars payable
in installments was then given to his daughter Mary, a
dollar each to three grandchildren, and the will then
proceeds:

"And I hereby bequeath all the real and personal
estate of which I may die possessed, *except that herein
before mentioned,* to my son, Charles C. Owen and his
heirs."      *      *      *

And then follows the language considered by my
Brother SHARPE, which, as I view it, has reference only
to the property left by deceased "except that herein
before mentioned," *i. e.,* the devise and bequest of the
one-third, the $1,000 bequest and the three $1 bequests.
I think the language of the first clause of the will
coupled with the language italicized unequivocally gave
Charles the fee to the third and is not so ambiguous as
to require the application of rules of construction.

But if I am in error in the conclusion that this will
is not open to construction as to the one-third given
Charles and we are required to apply the proper rules
of construction, I am persuaded that the same result
must be reached. I think two rules of law applicable
to the construction of wills preclude the result reached
by my Brother. The first of these rules is that the law
favors that construction of wills which will make a

distribution as nearly conformable to the general rule of inheritance as the language will permit. See *Rivenett* v. *Bourquin,* 53 Mich. 10; *In re Lamb's Estate,* 122 Mich. 239; *Murdoch* v. *Bilderback,* 125 Mich. 45; *Kilgore* v. *Kilgore,* 127 Ind. 276 (26 N. E. 56) ; *In re Long's Estate,* 228 Pa. 594 (77 Atl. 924). The following language will be found in the syllabus of the last cited case:

"In cases of doubtful construction the law leans in favor of an absolute, rather than a defeasible estate; of a vested, rather than a contingent one; of the primary, rather than the secondary intent; of the first, rather than the second taker, as the principal object of the testator's bounty; and of a distribution as nearly conformed to the general rules of inheritance as possible."

If the first clause of this will stood alone I do not think it could be questioned for a moment, but that Charles took the fee of the third subject to the life estate of his mother. *In re Lamb's Estate, supra.* I recognize the propriety and correctness of the rule that all parts of the will are to be considered when we are dealing with the question of construction; that the testator's intent is the thing sought, and to arrive at it all provisions of the will must be considered. But the language of the will is what we are to construe and the intent should be gathered from the four corners of the instrument. It is not necessary that we discover testator's motives. We are to determine what disposition he in fact made of his property by the language used and the law applicable thereto. This brings us to the second rule of law which to my mind prevents the construction arrived at by my Brother SHARPE.. This rule of law is that a testator may not create a fee with absolute power of disposal and at the same time clog that power of alienation by limitations over to another. This doctrine has been recognized in a long line of

cases in this court beginning with *Jones* v. *Jones,* 25 Mich. 401; the latest speaking of the court on the subject being in *Gibson* v. *Gibson,* 213 Mich. 31, where the late Justice BROOKE quite fully cited from both classes of cases. Speaking for the majority of the court, he there quoted with approval the following language from the supreme court of Iowa in the case of *Law* v. *Douglas,* 107 Iowa, 608 (78 N. W. 212):

"There are some things, however, which even a testator may not do, and which the courts are powerless to aid him in doing, however clearly his intentions may be expressed. He cannot create a fee with absolute power of disposal, and at the same time clog that power of alienation by limitations over to another. In other words, he cannot include provisions which are absolutely inconsistent in terms and meaning and have all given force and effect."

In the instant case Charles was, by the first clause of the will, given an absolute fee of the third, subject to his mother's life estate. I do not agree that the language used in the last clause of the will was applicable to the property mentioned in the first clause of the will, or that it was intended by the testator to apply to the one-third of the estate mentioned in that clause and already disposed of. But the most that can be said for it is that it was so intended, and that it was an attempt to limit the estate over to another after an absolute estate in fee had been created. Under the *Gibson Case* and the authorities therein cited this may not be done—the limitation over is void.

As already stated, I agree with the balance of the opinion of Mr. Justice SHARPE.