## *In re* JAMIESON ESTATE.

1. WILLS—DEFEASIBLE REMAINDER.

Devise of a share of residue to testator's brother upon death of testator's widow, "if then living, and if he is not then living, it shall be turned over to his heirs" devised a vested remainder subject to defeasance by his death before the life tenant, hence, where the brother predeceased the life tenant, he had no interest to pass by his will.

2. SAME—HEIRS—SPOUSE.

A testator's spouse is one of his heirs in the absence of an indication that the term *heirs* was used in other than its technical legal sense.

3. SAME—CONSTRUCTION OF WILL.

The goal of a court which is called upon to construe a will is to effectuate the expressed intent of the testator within pertinent statutory and precedential limitations.

4. SAME—LIFE ESTATE—DEFEASIBLE REMAINDER.

Devisee of share of residuary estate who was given such share subject to defeasance if not living at time of death of precedent life tenant, had to survive such life tenant in order to acquire an indefeasible interest in the estate so devised.

5. SAME—PRIMARY REMAINDERMAN—CONTINGENT REMAINDER.

The putative heirs of a primary remainderman who had been devised a defeasible remainder in that he had to survive a

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills § 1217.
  33 Am Jur, Life Estates, Remainders, and Reversions § 88.
[2] 57 Am Jur, Wills § 1372.
  Husband or wife as heir within provision of will. 79 ALR2d 1438.
[3, 9] 57 Am Jur, Wills § 1020.
[4, 5] 33 Am Jur, Life Estates, Remainders, and Reversions § 88.
  Vested or contingent character of remainder which is subject to be defeated by death of remainderman without issue before termination of particular estate. 109 ALR 136.
[6] 33 Am Jur, Life Estates, Remainders, and Reversions § 102.
[7, 8, 10, 16, 17] 33 Am Jur, Life Estates, Remainders, and Reversions §§ 120–123.
  Words of survivorship in will disposing of estate in remainder as referable to death of testator or to termination of intervening estate. 20 ALR2d 830 supplementing 114 ALR 4.
[11] 57 Am Jur, Wills § 1209.
[12] 57 Am Jur, Wills § 1133.
[13, 14] 33 Am Jur, Life Estates, Remainders, and Reversions §§ 105–107.
[15] 33 Am Jur, Life Estates, Remainders, and Reversions § 105.

life tenant, had only a contingent interest in the testator's estate since, in order to take, such putative heirs had to survive the primary remainderman and he had to predecease the life tenant, where there is no express testamentary language providing for other contingency as to such heirs.

6. Same—Vested Estates Favored.
   Vested estates are to be favored when construing a will.

7. Same—Inferences—Conditions of Survivorship.
   Conditions of survivorship will not lightly be inferred when construing a will.

8. Same—Ambiguity—Conditions.
   An ambiguity in a will existing because of doubt as to whether testator intended to condition the taking by a remainderman merely upon survival of the testator or upon survival of the holder of a precedent estate will not ordinarily imply the latter condition.

9. Same—Construction.
   The classic canon for construing a will is: *Inclusio unius est exclusio alterius.*

10. Same—Secondary Remaindermen as Heirs of Primary Remainderman—Conditions.
    No requirement of survival until the time of distribution should be imposed upon secondary remaindermen who are heirs of a primary remainderman, upon the latter of whom was imposed a condition of surviving until the time of distribution, when such requirement was omitted with reference to the heirs named by testator to take in the event of defeasance of primary remainderman's interest.

11. Same—Effective Date—Death.
    A will is to speak from the time death of the testator takes place.

12. Same—Intent.
    The clearly expressed wishes of a testator, consistent with the rules of law, must be given effect.

13. Estates—Vesting of Remainder Interest.
    The vesting of a remainder interest in a remainderman is not determinable solely by reason of the postponement of date of distribution of the estate.

14. Wills—Devise to Heirs—Secondary Remaindermen.
    A testator who disposes of property to heirs disposes of such estate to the heirs as determined on the date of the death of

their ancestor in the absence of a manifested cóntrary intent, and such contrary intent will not be deduced from the bare fact that the heirs are secondary remaindermen.

15. SAME—VESTING OF ESTATES.

Only plain unambiguous language by the testator will prevent application of the rule favoring early vesting of an estate, when construing a will.

16. SAME—DIVESTED REMAINDER—VESTING OF SECONDARY REMAINDERS.

Devise to testator's brother that was divested by reason of such brother's death prior to termination of life estate given to testator's widow, vested such brother's share in the secondary remaindermen, heirs of the brother, who were determinable as of the brother's death, rather than as of the death of the life tenant, where the will did not disclose an intent to make vesting of the secondary remaindermen's interest dependent upon their survivorship of the life tenant.

17. SAME—CONSTRUCTION—DEATH OF PRIMARY REMAINDERMAN PRIOR TO TERMINATION OF LIFE ESTATE—VESTING OF SECONDARY REMAINDER.

A primary remainder subject to defeasance by reason of the death of such remainderman prior to the death of the life tenant holding the prior estate is not an interest in the primary remainderman's estate which he may pass by will, where he predeceases such life tenant, hence, his heirs who were designated as secondary remaindermen became vested with his interest upon his death, determination as to who were his heirs being made as of the date of his death and as though he had died intestate, with distribution to such secondary remaindermen ensuing death of the life tenant.

Appeal from Wayne; Baum (Victor J.), J. Submitted June 4, 1964. (Calendar No. 22, Docket No. 50,542.) Decided January 4, 1965.

In the matter of the estate of Robert C. Jamieson, deceased. Louise Duncan, sister of deceased, filed petition for construction of will to determine who were entitled to share in distribution. Probate order determining heirs of a remainderman upheld in circuit court. Defendants C. E. Frazer Clark,

Jr., Georgiana Clark Fenton, and Jon Clark appeal. Reversed and remanded.

*Hill, Lewis, Andrews, Adams, Goodrich & Power* (*Charles C. Andrews* and *W. Merritt Jones Jr.,* of counsel), for trustees John W. Blanchard and C. E. Frazer Clark, and for plaintiff Louise Duncan.

*Dickinson, Wright, McKean & Cudlip* (*Frederick K. Plumb,* of counsel), for appellees Helen J. Delbridge and Alice D. Bellamy.

*Clarence Thomas Wilson,* for defendants C. E. Frazer Clark Jr., Georgiana Clark Fenton, and Jon Clark.

SOURIS, J. Robert C. Jamieson died April 17, 1946, having the previous day executed his will, which reads in part:

"I, Robert C. Jamieson, being of sound mind and memory, do hereby make and declare this to be my last Will and Testament, hereby revoking all former Wills made by me.

"My nearest relatives are my wife, Carolyn P. Jamieson, Address, Hotel Lenox, Madison Avenue, Detroit 26, Michigan; my brother A. Douglas Jamieson, residing at #910 Taylor Avenue, Detroit 2, Michigan, and my sister Louise Duncan, whose residence is St. Clair, Michigan. * * *

"4. The remainder of my estate, both real and personal, wherever situated, I give in trust to John W. Blanchard of Bloomfield Hills, Michigan, and A. Douglas Jamieson, my brother, with full power to sell and transfer any stocks, bonds or other assets of my estate and reinvest the proceeds thereof, or any funds which may become the property of said estate, in such income securities as are legal in Savings Banks in the State of Michigan, for the following purposes:

"Net income therefrom shall be paid to my wife Carolyn P. Jamieson during her lifetime. Said Carolyn P. Jamieson has some means of her own together with some income from annuity insurance and if these together with the net income from my estate are not sufficient to keep her comfortably during her lifetime, said trustees or their successors, are hereby authorized to convert into cash and turn over to said Carolyn P. Jamieson, at their discretion, enough of the proceeds of my estate to properly meet any necessary additional expenses needed by her during her lifetime.

"5. On the death of said Carolyn P. Jamieson, I direct that Ten Thousand ($10,000.00) Dollars shall be given to the Wayne County Medical Society of Detroit, Michigan, for such purposes as they think will be of the greatest value to the work of said Society.

"6. After the death of said Carolyn P. Jamieson and the payment of the bequest to the Wayne County Medical Society, I direct my trustees, or their successors, to divide into two equal parts the remainder of my estate and turn over one part to my sister Louise Duncan, if living, or to her heirs if she is not then living, and I direct that the other part be turned over to my brother, A. Douglas Jamieson, if then living, and if he is not living, it shall be turned over to his heirs."

A. Douglas Jamieson, testator's brother, died testate in 1956, naming as his sole beneficiary his wife Georgia. Georgia died in 1958, bequeathing 20% of her estate to her niece and two nephews, appellants herein. Carolyn Jamieson, Robert Jamieson's wife and life tenant under his will, died in 1962. Appellants sought in the probate and circuit courts a share of the remainder of testator's estate, basing their claim upon the theory that A. Douglas by will devised his remainder interest therein to his wife Georgia, who, in turn, devised

20% thereof to appellants. In the alternative, appellants claimed that they are entitled to take a share of the remainder upon the theory that Georgia Jamieson, as an heir of A. Douglas, took (in her own right as an heir, and not as sole devisee, of A. Douglas) a vested remainder interest in the estate upon the death of A. Douglas, of which vested remainder she devised 20% to appellants.

Appeal is taken by leave granted from the circuit court's affirmance of the probate court's order which rejected appellants' claims and which directed that the residue of Robert Jamieson's estate be distributed as follows:

"a three-quarters (3/4) part thereof to Louise Duncan, sister of deceased;

"a one-eighth (1/8) part thereof to Helen Delbridge, niece of deceased;

"a one-eighth (1/8) part thereof to Alice D. Bellamy, niece of deceased".

Helen Delbridge and Alice Bellamy were surviving daughters of testator's sister Mary, who had died prior to execution of testator's will.

Upon testator's death A. Douglas was devised a vested remainder subject to defeasance by his death before the life tenant. *McInerny* v. *Haase*, 163 Mich 364.[1] Since he did so die, he had no interest to pass by his will. The pivotal question thus is, did the heirs of A. Douglas (his wife Georgia,[2] his sister Louise Duncan, and Helen Del-

---

[1] And see CL 1948, § 554.13 (Stat Ann 1957 Rev § 26.13), which purports to distinguish between vested and contingent remainders. For a critical discussion of the analytical utility of that statute, see *Rendle* v. *Wiemeyer*, 374 Mich 30, 42, n 5.

[2] Absent indication that "heirs" was used in other than its technical legal sense as meaning those to whom an intestate's property passes, a testator's spouse is one of his heirs. *Turner* v. *Burr*, 141 Mich 106; *Menard* v. *Campbell*, 180 Mich 583 (Ann Cas 1916A, 802); *In re Shumway's Estate*, 194 Mich 245 (LRA 1918A, 578). CL 1948 and CLS 1961, § 702.80 *et seq.* (Stat Ann 1962 Rev § 27.3178 [150] *et seq.*). The Michigan cases holding that a widow is an heir of her

bridge and Alice Bellamy, daughters of his·predeceased sister Mary) take a vested remainder upon his death not subject to defeasance, as appellants claim, or was their interest then contingent because subject to a condition precedent, that of surviving the life tenant?

It has always been our goal to effectuate, within pertinent statutory and precedential limitations, the ·expressed will of the testator.   There can be no ·doubt that Robert Jamieson intended that A. Douglas had to survive the life tenant in order to render his interest in the Jamieson estate indefeasible. Testator did not, however, explicitly attach a like condition of survivorship to the heirs of A. Douglas, who were the alternative takers of one-half the remainder under the will.[3]   This being so, their interests should be held to have vested indefeasibly upon A. Douglas' death (1) unless we are willing to say that, as a rule of law, secondary remainders to heirs of a primary remainderman do not vest, absent express contrary testamentary language, until the time for distribution of the estate or (2) unless we find that it was the testator's implicit intent that A. Douglas' heirs must survive the life tenant to take.

As to the first proposition, it has long been the law in Michigan that vested estates are to be favored, and that conditions of survivorship will not lightly be implied.   *Toms* v. *Williams*, 41 Mich 552, 565.   Indeed, we have characterized as a rule of property not to be disturbed the rule that when ambiguity exists whether a testator intended to

husband are not without precedent.  See the laws of Hammu-rabi, promulgated sometime prior to 1669 B.C., in II Driver & Miles, The Babylonian Laws 67 (1952 and 1955).

3 Prior to A. Douglas' death his putative heirs clearly had only a ·contingent interest in Robert's estate, since in order to take, they not only had to survive A. Douglas, but their interest was subject to a further condition precedent, namely, the death of A. Douglas before the life tenant.

condition a remainderman's taking of an estate merely upon survival of the testator or upon survival of the holder of a precedent estate, the latter condition should not be implied. See *In re Patterson's Estate,* 227 Mich 486, 490, 491, and *Johnson v. Atchinson,* 362 Mich 296, 299.

Analogously, it would seem that no requirement of survival until the time of distribution should be imposed upon secondary remaindermen who are heirs of a primary remainderman, upon the latter of whom was imposed a condition of surviving until the time of distribution, when such requirement was omitted with reference to the heirs.

It is, therefore, surprising to view the result reached by the Court in *In re Wagar's Estate,* 292 Mich 452. There, testator created a trust for the lives of his wife and children, the remainder to four named grandchildren, with a proviso that should any grandchild die before the survivor of the children, his share should be divided among his legal heirs. One grandchild, Wellington, died after the will was executed but before the testator. The Court held properly that Wellington's share nonetheless should be divided among his legal heirs, relying upon *Clark v. Mack,* 161 Mich 545 (28 LRA NS 479), but added, without citing any authority therefor, that those heirs were to be determined as of the death of the surviving child.[4] Such a holding completely ignored the language of prior cases such as *Toms* and *Patterson, supra.*

---

[4] In *Clark,* testatrix devised her property to two sisters jointly, the remainder, on the survivor's death, to be "divided among the [testatrix's] nearest of kin." Both sisters predeceased testatrix and the Court held that the property should be divided among testatrix's nearest kin determined, of course, as of her death. Certainly this is not authority for the Court's last holding in *Wagar,* the effect of which was to say, if we may use the terms of art which the *Wagar* Court ignored, that the remainder estate did not vest in Wellington's heirs upon the testator's death, but rather was subject to a condition precedent of survival of the life tenants.

The error which our Court committed in *Wagar* is one which seems to have a fatal attraction for many courts. See *L'Etourneau* v. *Henquenet,* 89 Mich 428 (28 Am St Rep 310), discussed *infra,* note 6. The *Wagar* will when executed made the interest of any grandchild's heir contingent upon the death of the grandchild before that of the survivor of the life tenants. Because the heir's interest was contingent upon this event, the Court apparently concluded that it also must be contingent upon the heir's own survival of the life tenants, a conclusion required neither by policy nor by the express language of the testator. See 2 Simes & Smith, The Law of Future Interests (2d ed, 1956), § 594.

Appellees and the trial court also find comfort in the case of *Hay* v. *Hay,* 317 Mich 370. There a trust was created to last until the death of the survivor of two grandchildren, whereupon the estate's realty was to be distributed among testator's "legal heirs".

We note that *Hay,* inasmuch as it involves a testator's heirs rather than the heirs of a primary remainderman, is not directly in point. However, we examine it and like cases because their consideration of the problem of when a testator's heirs are to be determined in the absence of express directions by him may be of use in the analogous situation involving determination of the heirs of a primary remainderman named to take as secondary remaindermen.

Over the dissent of Justices Reid and Bushnell, five members of the Court held in *Hay* that testator's heirs should be determined at the time of the termination of the trusts, rather than at testator's death, thereby suspending the vesting of the remainder until the death of the survivor of testator's two grandchildren, the life beneficiaries of the trust.

The will in *Hay* disposed of a multimillion dollar estate by means of complicated trust provisions, with ultimate distribution of the corpus postponed almost inevitably for half a century or more. The majority opinion recognized that ordinarily early vesting is favored, that heirs are determined as of testator's death, that conditions of survivorship will not be implied. However, it concluded it was so evident that by "heirs" testator meant those who were living at the time of distribution, rather than the time of his death, that this intent should control. Justice NORTH listed seven provisions from the will which indicated to him that such was the testator's intent.[5] The dissenting justices, of course, con-

---

[5] Upon examination, the seven factors relied upon do not appear particularly persuasive of the majority's conclusion that "the testator did not intend to leave his estate to the persons who were his heirs at the time of his death":

(1) *The testator named in his will those who would have taken had he died intestate (his widow, his children, and the children of a predeceased child), and provided them with annuities rather than giving them a direct interest in the estate.* The Court's unspoken supposition is that testator would not have given annuities to these beneficiaries if he intended that they should participate as remaindermen of his estate as his heirs determined as of the date of his death. In *In re Shumway's Estate*, 194 Mich 245 (LRA 1918A, 578), decided before the execution of the *Hay* will, testator willed one-half of his personalty to his wife absolutely, and willed her all his realty for life, and upon her death "to my legal heirs to be divided between them according to the provisions of the statute." The Court held that the wife, as an heir, took a vested remainder in the realty:

"In case of a devise for life with remainder over to testator's heirs, which includes the life tenant, the fact that testator knew the life tenant would be dead when the time for division, possession, and enjoyment of the remainder arrived, would not justify the court in changing the terms of the will, and each of the devisees seised of a vested remainder might devise, convey, or otherwise dispose of his or her interest, unless restricted by the plain terms of the will. *Robinson* v. *Mitchell*, 99 Md 50 (57 A 625)." 194 Mich 245, 252 (LRA 1918A, 578).

The Court also cited approvingly this language, and more, from *Archer* v. *Jacobs*, 125 Iowa 467, 480 (101 NW 195):

" 'The will gives evidence of having been prepared by a person of experience, and the testator himself must have been a man of intelligence and business sagacity. Had it been his purpose to suspend the vesting of the remainder until his daughter's death, it is very probable he would have said so in unequivocal terms, and not have left it be arrived at as a matter of inference.' " 194 Mich 245, 253.

(2) *Payment of annuities could be made out of corpus if income proved inadequate.* It is not explained why this indicates that testator intended his heirs to be determined as of termination of the trusts, rather than as of his death. The provision is so common as to be without significance in making such determination.

(3) *Annuities were to end upon expiration of the trusts, and not vice versa.* Again, the relevance of this provision to the majority's conclusion concerning vesting of the remainder is not made clear. Indeed, upon some reflection we are unable to conceive what the majority logically could infer with regard to vesting of the remainder from the fact that testator directed that annuities should end when the trust did.

This *non sequitur* may have been engendered by a basic misapprehension reflected in the majority's opinion concerning the theory of vesting. There was some dispute in the case as to whether the will had actually vested any title in the trustees. The majority apparently thought that an antithesis existed: if title vested in the trustees no estate vested in any remainderman upon testator's death, and vice versa. See 317 Mich 370, 400, 406, 407. This, of course, is fallacious, for it is of the essence of the theory of estates that different estates in the same property may be vested in different individuals at the same time. Thus, a will devising property to "A for life, then to B and his heirs" gives A a life estate vested in possession and B an indefeasibly vested remainder in fee, but with possession postponed until expiration of A's estate.

(4) *The annuities were subject to spendthrift safeguards.* If this provision evidenced testator's distrust of his children's financial competence, it does have some tendency to indicate that he did not intend the remainders to vest upon his death in the annuitant heirs, for such vested remainders would be alienable, although it is doubtful whether there would be an attractive market for them, testator having made it unlikely that they would vest in possession until half a century or more had elapsed. But *cf. Rotch v. Rotch* (1899), 173 Mass 125 (53 NE 268), where language similar in import to that used in the *Hay* will was held not to preclude a vesting of the estate in testator's heirs as of his death, which heirs were also life beneficiaries under a spendthrift trust.

(5) (6) (7) *The trustee was empowered, during the long term of the trust, to sell and lease realty, except for Minnesota ore lands, and to reinvest funds.* Neither the fact that the trusts were of potentially long duration nor the fact that the trustee was given broad, general powers of management of the assets is inconsonant with the existence of vested remainders in testator's heirs as of his death. A limitation upon disposition of certain Minnesota lands could have been a judgment by the testator that those lands were of such present and potential value that they should be kept as the core of the trust assets. As to the majority's statement that this provision indicated that the testator wanted no one to have a right to dispose of the Minnesota lands before the trusts ended, this result is not achieved by a holding that no remainders vested until then, for contingent remaindermen could dispose of their interests just as could vested remaindermen, and the longer the trust endured, with a consequent aging of the measuring lives, the more practically disposable would a contingent remainderman's interest have become.

cluded from the same will that such was not his intent.

The majority in *Hay* cited (p 407) as authority for its conclusion that the remainder did not vest upon testator's death part of the following language from *In re Churchill's Estate,* 230 Mich 148, 158, 159:

"A consideration of our own cases establishes the rule that where upon an examination of the will it clearly appears that it was the intent of the testator that the estate should vest only on the happening of a particular event such intent will govern; *where such intent does not clearly appear the estate will vest on the death of the testator. In other words, the intent will be given effect if clearly apparent, otherwise rules of construction will be applied.*"

Justice NORTH did not include the italicized portions in his quotation, but rather indicated that the sentence ended at the semicolon.

*Churchill* is not otherwise persuasive precedent for *Hay,* however, because in the *Churchill* will the Court found there was precise language defining the event upon which the remainder interest in the testator's property should thereupon vest. A life estate was given to an incompetent daughter after which the property (p 152) "shall thereupon belong to and vest absolutely in the following persons". In such circumstances vesting arguably properly was postponed until death of the life tenant.[6]

---

[6] Nor do the cases relied upon in *Churchill,* some of which were cited again in *Hay,* persuasively support the *Hay* result. In *Churchill* the Court relied upon *Fitzhugh* v. *Townsend,* 59 Mich 427; *In re Lamb's Estate,* 122 Mich 239; *Plant* v. *Weeks,* 39 Mich 117; *Garman* v. *Hawley,* 132 Mich 321; *Hunter* v. *Hunter,* 160 Mich 218; *L'Etourneau* v. *Henquenet,* 89 Mich 428 (28 Am St Rep 310); *Hadley* v. *Henderson,* 214 Mich 157; and *Rozell* v. *Rozell,* 217 Mich 324, as examples of cases in which vesting of devised estates was deferred until the occurrence or nonoccurrence of a stated future event or condition. In some of the cited cases, although the Court sometimes loosely used

language appropriate to contingent estates, the title in question more accurately should have been described as vested subject to defeasance. In others of the cited cases, either the facts demonstrated clearly testator's intent to defer the vesting of title or the occurrence or failure to occur of a stated event or condition made it unnecessary to determine with precision whether the interest devised was contingent or vested subject to defeasance.

Thus in *Fitzhugh* v. *Townsend*, 59 Mich 427, the Court considered a devise to testatrix's granddaughter for life, remainder to her granddaughter's lawful issue or, in the event the granddaughter died without lawful issue, to testatrix's brothers and sisters or their children per stirpes.

The Court characterized the interest taken upon testatrix's death by her predeceased brother's son as contingent upon his survival of the life tenant's death without lawful issue, purporting to find in the will itself clear expression of testatrix's intention that only the children of her deceased brothers and sisters living at the time of distribution should take.     Whether the Court properly discerned testatrix's intent, and we think it did not, the significant point is that the *Fitzhugh* opinion supports the holding in *Hay* only to the extent that vesting of an estate can be postponed if such testamentary intent can be found in the will.   The fact is that in *Fitzhugh* the brother's son's remainder interest could have been found to have been contingent as a matter of law without the effort undertaken by the Court to determine testatrix's intent by its strained interpretation of the will.  See 3 Restatement, Property § 270 (1940).

In *In re Lamb's Estate*, 122 Mich 239, the devise was to testatrix's brothers and sisters, but if any should die before completion of probate of the estate, to his or her children per stirpes.   Here the Court simply held that a brother who died before the estate was closed, although after testatrix's death, could devise no interest acquired by testatrix's will because he did not survive closing of the estate.     There was no need to characterize the interest the brother took upon testatrix's death because, whether contingent or vested subject to defeasance, he had no devisable interest upon his death before closing of the estate.

In *Plant* v. *Weeks*, 39 Mich 117, Mr. Justice COOLEY construed a devise of property to testatrix's sole daughter, a minor, as conditioned upon her attaining majority.   It was unnecessary for the Court to determine whether the estate devised was contingent or vested subject to defeasance.   The claim submitted for review was that the daughter, having been testatrix's sole heir, was entitled to the entire estate under the worthier title doctrine of the common law, a claim that depended upon a finding that the daughter's interest under the will was the same as that she would have been entitled to take under the descent statute.   But Justice COOLEY'S finding that the devise was clearly conditioned, whether contingent or vested, obviated applicability of the worthier title doctrine.

Similarly, in *Garman* v. *Hawley*, 132 Mich 321, and *Hunter* v. *Hunter*, 160 Mich 218, the Court's decisions would have been unaffected whether the devised interests were contingent or vested subject to divestment simply because in both cases the events upon which the estates were conditioned occurred thus precluding vesting of a contingent estate or resulting in divestiture of a vested estate.

In *L'Etourneau* v. *Henquenet*, 89 Mich 428 (28 Am St Rep 310),

testator devised a life estate to his wife, remainder over to three named children, and then provided:

" 'And whereas, one or more of my said children may not survive me or my said wife, I hereby order, direct, and devise the share of such devisee or devisees in such case to be equally divided amongst the remaining children herein named, and to their heirs, share and share alike.' "

The Court (p 433) properly described the devises to testator's named children as vested remainders subject to be defeated by their deaths prior to the life tenant's. However, in considering the nature of the secondary remainder interests devised by the clause quoted above, in the event any of the named children should predecease testator or the life tenant, the Court concluded, that the surviving children would take that share of the remainder, which otherwise would have gone to the predeceased child, as a *contingent remainder*. The Court said (p 436) the secondary remainder was contingent because until the death of the life tenant it could not be known who would be entitled to it! In *L'Etourneau*, as in *In re Wagar's Estate*, 292 Mich 452, discussed *supra*, the Court inexplicably read into the quoted clause a condition of survivorship of the life tenant by the secondary remaindermen, identical to the condition upon the primary remaindermen expressly articulated by the testator, when no such condition appears in the language of the will and no reason in law or logic requires it be implied.

In *Hadley* v. *Henderson*, 214 Mich 157, the Court construed a will which devised the residue of testator's estate to his son and his heirs, but in the event of the son's death without issue, to named legatees. The Court held that upon testator's death the named legatees took only a contingent remainder because it was conditioned upon an uncertain event—the son's death without issue. In *Hadley*, as in *In re Churchill's Estate* and as in *Fitzhugh* v. *Townsend*, but unlike *Hay* v. *Hay* and the Jamieson will we here construe, the devise of the remainder over was expressly conditioned upon the happening of an uncertain event and so the Court properly could characterize it as contingent. This case of *Hadley* and the case of *Fitzhugh* v. *Townsend*, of all those cited in the *Churchill* opinion, are most apt to the issue presented in *Churchill*, but they remain inapt to the issue presented in *Hay*, there being no express condition precedent to vesting contained in the *Hay* will.

Finally, *Rozell* v. *Rozell*, 217 Mich 324, also cited in *Churchill*, involved a devise of a life estate to testatrix's son, then life estates to the son's children, and remainder over. The secondary life estates and the remainder were invalidated as in violation of Michigan's then applicable two lives in being rule against perpetuities (CL 1948, § 554.17 [Stat Ann § 26.17], repealed by PA 1949, No 38). Its only pertinence to *Churchill* is that determination of the secondary life estate class, testatrix's grandchildren, was required to be postponed until death of the testatrix's son, absent any expression of a contrary testamentary intention, thus providing for the *Churchill* court an example of another factual circumstance wherein vesting of an interest devised by will normally is postponed. If this be the reason *Rozell* was cited in *Churchill*, we need not pause other than to acknowledge that a testator may, indeed, as in *Churchill's* will, expressly provide for postponement of the vesting of an estate, but we are constrained to note that had the secondary life estates

Thus, the cases which appellees might rely upon do not persuasively dictate a result in their favor. For appellees to prevail, we must either adopt a constructional rule that heirs devised future interests normally must be determined as of the time the devise is to be reduced to possession, or decide that such was the implicit intent of this testator. Many of our past decisions, only some of which are discussed above, commit this Court to favor early vesting of estates. We can discern no persuasive reason to justify a departure therefrom.

While we shall continue to try, as far as is practicable, to effectuate a testator's intent, we also recognize that the judiciary should be circumspect in its search for such intent. The temptation is always before us to reach what seems to us a desirable result and then to justify that result as being consonant with a testator's intent. Such a temptation was acknowledged, but resisted, by Chief Justice Cooley in *Kinney* v. *Kinney,* 34 Mich 250. There testator willed to his wife "so much of my property, both real and personal, as is allowed by law to widows in cases where no will is made" or $500. By statute an intestate's widow was given a support allowance during settlement of the estate, specific chattels to the value of $450, one-third of testator's personalty and a dower interest in his realty. Chief Justice Cooley wrote, in *Kinney*:

"The paragraph of the will upon which the question arises is not expressed in ambiguous terms, and there can be no difficulty in giving effect to the apparent intent manifest in it. But it is claimed on behalf of the heirs that the apparent intent was not

to Rozell's grandchildren not violated our then applicable rule against perpetuities, those grandchildren living at testatrix's death would have taken vested life estates subject to open to admit into their class afterborn brothers and sisters. See *McLain* v. *Howald,* 120 Mich 274, 276, 277 (77 Am St Rep 597), relied upon in *Rozell.*

the real intent existing in the testator's mind when the will was made. To prove this, resort has not been had to direct testimony, but the condition of the estate is proved, and it is said there springs from this an inference amounting to practical demonstration, that the intention of the testator was not what the language he has employed would indicate.

"The fact on which reliance is chiefly placed is, that the personal property of the testator amounted at the time the will was made to $25,000. The widow, if entitled to one-third of this, would receive something like $8,000, besides the temporary provision for support, and the $450 in specific chattels selected by her. To give her the alternative of selecting between $8,000 and $500 would be an absurdity of which it is supposed no reasonable man would be guilty, and it is said we must assume that something different was intended. If we are at liberty to infer that by the 'personal property allowed her by law' the testator intended only the specific property to the value of $450, which the widow is allowed to select, the difficulty will disappear. $500 in cash as the alternative to specific property of the value of $450 would afford a choice that might reasonably be presented to anyone; and it may fairly be considered a sensible deduction from all the circumstances, when these are brought into the case by proofs, that it was this reasonable alternative which it was the purpose of the testator to present, rather than one manifestly absurd from the great diversity in value of the two things between which the choice was to be made.

"But this method of ascertaining the testator's intent takes us away from a consideration of his language, in which he must be supposed to have carefully expressed his wishes, and invites us to conjecture what probable purpose he had in view which he has failed to express. Whatever may be the probabilities that we shall thereby reach the testator's real intent, it is manifest that this method is not putting a construction upon the will made by

him, but it is making a new one of quite a different purport." 34 Mich 250, 252, 253.

"A will, though often made while death is contemplated as a remote event, is to speak from the time the death takes place. The will made by a rich man may therefore take effect only after he has died poor. If he was reasonably thoughtful and prudent in making it, it will probably be found that he made provision, while giving away what then promised to be a large fortune, for the possibility that the distribution would be of the mere wreck of a fortune only. In such a case a gift that when made seemed princely may dwindle into insignificance; and a provision for a small but certain legacy as the alternative to one probably large but possibly worthless, may be a proper dictate of kindness and generosity.

"A court can never know that a testator may not have contemplated such a possibility when making a testamentary disposition of his property. The probabilities rather favor such a view; for the instrument is not to have immediate effect, and may remain inoperative for many years. But into the testator's hopes or expectations on this score judicial tribunals cannot inquire any farther than he has seen fit to express them. Where he has clearly expressed a wish, consistent with the rules of law, they must give it effect; they are not at liberty to surmise that his real wishes were something different." 34 Mich 250, 255, 256.

Likewise in this case of Jamieson the testator unambiguously provided that if A. Douglas did not survive the life tenant, his (A. Douglas') heirs were to take. No argument is made that "heirs" was used in other than its technical sense, but rather it is claimed that the heirs are to be determined as of the death of the life tenant.

In effect we are being asked to attach to the word "heirs" either the condition that their remainders vested but were subject to defeasance upon death

prior to the life tenant or that their remainders were contingent. And we are being asked to do this in a case where the testator, although expressly requiring that the primary remainderman survive the life tenant, makes glaring by omission any such requirement as to the primary remainderman's heirs.

Two arguments are made in support of the proposition that when a primary remainderman is required to survive until a certain point in time to take a possessory estate, so must secondary remaindermen, even though no such requirement is expressly annexed to their estates.

First, it is argued that since the testator expressly required survivorship in the first instance, he must have intended such a requirement be applied to secondary remaindermen also. But such an approach is inconsonant with usual constructional techniques. The classic canon is, *Inclusio unius est exclusio alterius*. See *Foster's Case* (1614), 11 Co Rep 56b (77 Eng Rep 1222, 1226). Thus, if a testator expressly requires survival by the primary remainderman, and omits any such requirement as to secondary remaindermen, the requirement of survival should not be annexed to the secondary takers, absent clear indication by the testator to the contrary. See 3 Restatement, Property §§ 308, 309 (1940).

It is probable that in many cases a testator who names his or another's heirs as secondary takers has done so simply as a device to provide for the descent of his property in an unlikely eventuality, and actually has given no thought to the question of the date upon which the heirs should be determined. See 2 Simes & Smith, The Law of Future Interests (2d ed, 1956) § 728:

"It is, of course, quite natural for a draftsman of a will, after making provision for testator's specific desires, to put in an ultimate limitation 'to the

heirs' of some designated person, to take care of the contingency which may arise if some of the previous gifts should fail. Perhaps it is because the draftsman does not think that there is any real likelihood that the limitation to heirs will ever take effect that he is so unwilling to be more specific in his writing."

Thus, in this case, A. Douglas' heirs were to take only in the event of the death of A. Douglas, who was about 58 years old at the time of execution of the will, if he should die before the life tenant Carolyn, who was about 65 at that time.

A second argument made in favor of a constructional preference for postponing determination of heirs until distribution of a future estate, rather than making such determination upon death of the ancestor, equates the testator's explicit intent to postpone distribution with an implicit intent to postpone vesting until the time of distribution. To argue that vesting should be postponed for that reason alone is, of course, absurd, for if such were a general rule no remainder ever could be vested.

The above arguments are referred to in an Annotation, "Time as of which members of class described as remainderman's or life tenant's 'heirs', 'next of kin', 'descendents', 'issue', 'family', or the like, substituted by will to take in place of deceased remainderman, are to be ascertained", 33 ALR2d 242 (1954), in this passage, cited by the appellees and the trial court:

"Most American courts, however, especially in the more recent decisions, have applied the date of distribution at the termination of the intervening estate as the time for ascertainment of the class, in the absence of some indication of a contrary intent on the testator's part, apparently adopting a rule that where the time of distribution is to be postponed, the time for ascertainment of takers should normally also be postponed. This conclusion has

also been justified in some of the cases upon the theory that a testator requiring that a primary beneficiary survive the life tenant in order to take must ordinarily be supposed to have intended the same condition as to the substituted remaindermen." 33 ALR2d 242, 244, 245.

Insofar as the cases relied upon by the annotator as authority for this conclusion are based upon the two arguments above discussed they are, of course, unpersuasive. Moreover, some of the cases relied upon in support of the annotator's rule upon analysis do not stand unequivocally for the propositions for which cited.[7]

---

[7] For example, *Proctor v. Clark* (1891), 154 Mass 45 (27 NE 673, 12 LRA 721), involved a devise to testator's wife for life, then to testator's brother "if then living; but if he is not then living, then to convey the same in fee to his then heirs at law." Mr. Justice Holmes properly held that the devise to the heirs expressly conditioned their taking upon survival of the life tenant (see 2 Simes & Smith, The Law of Future Interests § 734 [2d ed, 1956]), and noted (p 48) that the word "then" qualifying the word "heirs" excepted the case from the general rule of *Dove v. Torr* (1879), 128 Mass 38. In *Dove*, Mr. Chief Justice Gray observed that a devise to testator's heirs should be construed as those heirs living at testator's death, "unless a different intent is plainly manifested by the will." 128 Mass 38, 40. And see *Old Colony Trust Co. v. Stephens* (1963), 346 Mass 94 (190 NE2d 110), wherein testator left property in trust for his wife for life, then to his three daughters equally for life (issue of a deceased daughter to take their mother's share) and upon expiration of the trust " 'to my heirs-at-law' ":

"There is inevitably some incongruity in giving to four beneficiaries equitable life interests in trust property and then giving to them, as 'heirs at law,' vested legal remainder interests. A testator, who thought through his will carefully, might hesitate to make such a gift. In several cases, however, this type of incongruity has not been regarded as sufficient to lead this court to interpret the word 'heirs' as not 'carrying its usual meaning.' [Citing cases.]

"We recognize that the considerations outlined above, viewed in the aggregate, furnish some support to the contention that the testator meant the ultimate remainder interest to go to his heirs determined at the termination of the trust. Nevertheless, after weighing these considerations, the actual intention of the testator remains a matter of conjecture. Accordingly, we apply the usual rule of construction [that a testator's heirs are to be determined as of the time of his death]." 190 NE2d 110, 113.

Others of the annotator's cases, for example, *In re Freeman's Estate* (1922), 151 Minn 446 (187 NW 411), appear to justify their holdings as effectuating the testator's intent, having found that intent through the discredited (See 3 Restatement, Property § 260

We believe the correct rule appears in *New England Trust Co.* v. *Watson* (1953), 330 Mass 265, 267 (112 NE2d 799):

" 'In the accurate use of language, only those entitled to inherit at the death of another can be called his heirs. Accordingly, unless a contrary intention appears, a gift in a will to the heirs of a person, whether he be the testator or a life tenant or another, will be construed as a gift to such heirs determined as of the time of death of that person.' "

See, also, *Sweeney* v. *Kennard* (1954), 331 Mass 542 (120 NE2d 910);[8] *Katz Investment Co.* v. *Lynch*

---

[1940], and *In re Hurd's Estate*, 303 Mich 504) "divide and pay over" rule.

Consider also the annotator's citation of *Branch* v. *De Wolf* (1915), 38 RI 395 (95 A 857), which held in a complex factual situation that heirs of deceased remaindermen, named as secondary remaindermen, were to be determined as of the death of the life tenant. That case was considered in *Powers* v. *Dossett* (1951), 78 RI 235 (81 A2d 275), which involved property left in trust for testatrix's mother-in-law and father-in-law for life, then to testatrix's heirs at law. *Branch* was held inapplicable since "we find nothing [in the will] to show clearly that the testatrix intended that those answering such description [heirs at law] should be determined at a time other than at her death." 78 RI 235, 240.

[8] *Watson* was among the cases relied upon by the Massachusetts court in *Sweeney* v. *Kennard*. There, testator devised a life estate to his son George, leaving his wife surviving, then a life estate to George's wife, remainder to George's issue, but if there were no issue the devised property "shall be equally divided between my sons Byron F. Horne and John E. Horne or their heirs by right of representation." George died without issue, survived by his wife, who was predeceased by Byron F. and John E. Respondents in the action, which was brought upon the death of the second life tenant, George's wife, to determine the mode of distribution of the estate, were John E.'s widow, his two daughters, and the administrator of the estate of John E.'s son, who had also predeceased the life tenant; and Byron F.'s two daughters, and the administrator of the estate of Byron F.'s widow, who survived the life tenant. The court said:

"We fail to find in the instrument as a whole an intent, which would be contrary to the general rule, that the heirs of Byron and John E. should be ascertained at a time other than at their respective deaths. Neither do we discover any dominating purpose that none but blood relatives of the testator should share in the remainder after the death of one who was not a blood relative but the widow of his son George. We do not accept the contention that the widows of Byron and John E. are excluded because the will limits the recipients to lineal descendants."

(1951), 242 Iowa 640 (47 NW2d 800); *In re White-head* (1919), [1920] 1 Ch Div 298; *Re Gardner* (1902), 3 Ont L Rep 343.

We conclude that unless a contrary intent is manifested, when a testator disposes of property to heirs, the heirs are to be determined upon the death of their ancestor. Such contrary intent will not be deduced from the bare fact that the heirs are secondary remaindermen. Nor will such contrary intent be found to exist simply because some of the testator's language may be strained into ambiguity, but rather "only plain, unambiguous language by the testator will prevent application of that rule [favoring early vesting] in construing a will." *In re Shumway's Estate,* 194 Mich 245, 254 (LRA 1918A, 578). The circumspection displayed by Chief Justice Cooley in *Kinney, supra* pp 245–247, 34 Mich 250, 252, 253, 255, 256, was reflected in *Shumway,* when in discussing testator's intent the Court said: "but the intent must be tangibly expressed somewhere in the instrument in such language as plainly conveys the thought beyond mere surmise, conjecture, or supposition". 194 Mich 245, 255. And see Mr. Justice Campbell's opinion in *Porter v. Porter,* 50 Mich 456, 461: "It is easy enough in drawing wills to fix the time of vesting beyond any peradventure. But local law and reason both, in our judgment, favor vested estates, and subserve justice."

In this case of Jamieson, we do not find that the testator expressed any intention that the heirs of A. Douglas must survive the life tenant to take, although he did specifically provide that if A. Douglas did not survive the life tenant his estate would be divested. We therefore hold that an estate in remainder vested indefeasibly in A. Douglas' heirs who were, as of the date of his death, his wife, his sister Louise Duncan and his nieces Helen Del-

bridge and Alice Bellamy, daughters of his predeceased sister Mary. To hold otherwise would require us (1) to assume that when testator made his will he did not anticipate and provide for that which has eventuated; (2) to speculate as to what testator would have done had he anticipated A. Douglas' death before the life tenant; (3) to decide that, even though he did not say so in his will, had he reflected upon it, he would have required A. Douglas' heirs to survive the life tenant to take; and (4) in order to reach conclusion (3), to have an intimate understanding of testator's relationships with all of the potential takers under the will. This task we modestly decline, preferring to take testator's will as he expressed it.

Reversed and remanded to the circuit court to be remanded by that court, in turn, to the probate court for vacation of the order assigning residue entered on June 18, 1962, and for entry of a new order assigning the residue of the estate of Robert C. Jamieson, one-half to Louise Duncan as primary remainderman under the will of Robert C. Jamieson and one-half to the heirs, their devisees and assigns, of A. Douglas Jamieson, determined as of the date of his death, in such shares as they would be entitled to take of A. Douglas Jamieson's estate had he died intestate. Costs of this appeal may be taxed in appellants' favor.

KAVANAGH, C. J., and DETHMERS, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred.

KELLY, J., did not sit.